EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| María G. Chévere Mouriño<br>     Peticionaria<br><br>     v.<br><br>Salomón Levis Goldstein<br>     Recurrido | Certiorari<br><br>2000 TSPR 163 |
|---|---|

Número del Caso: CC-1998-634

Fecha: 03/noviembre/2000

Tribunal de Circuito de Apelaciones:

                  Circuito Regional I

Juez Ponente:

                  Hon. Yvonne Feliciano

Abogada de la Parte Peticionaria:

                  Lcda. Maritza Miranda López

Abogados de la Parte Recurrida:

                  Lcda. Sylvia Vilanova Hernández
                  Lcda. Olga García Vincenty
                  Lcdo. Harold D. Vicente

Materia: Filiación y Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María G. Chévere Mouriño

    Peticionaria

                               CC-1998-634

       v.

Salomón Levis Goldstein

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.

San Juan, Puerto Rico, a 3 de noviembre de 2000

El asunto que hoy nos ocupa es uno de alimentos para menores y es secuela de la Opinión emitida por este Tribunal en María Chévere etc. v. Salomón Levis Goldstein, el 15 de marzo de 2000, 150 D.P.R.____ (2000), 2000 TSPR 42, 2000 J.T.S. 56 (en adelante Chévere v. Levis I). En esta ocasión nos corresponde determinar las necesidades de los menores cuando el padre alimentante ha aceptado capacidad económica para pagar la pensión que se fije. Como corolario de lo anterior, debemos resolver si el Tribunal de Circuito de Apelaciones (en adelante Tribunal de

Circuito) actuó correctamente al reducir la cuantía de pensión alimentaria otorgada por el Tribunal de Primera Instancia.

A continuación exponemos los hechos pertinentes conforme surgen de los documentos que obran en autos.

I

En octubre de 1996, la Sra. María Chévere Mouriño (en adelante señora Chévere) presentó una acción de alimentos ante el Tribunal de Primera Instancia, Sala Superior de San Juan. En dicha acción solicitó al padre de sus dos hijos menores, Sr. Salomón Levis Goldstein (en adelante señor Levis), una pensión alimentaria de diez mil dólares ($10,000) mensuales para éstos.[1] Tal cuantía estuvo basada en las aportaciones que el señor Levis hacía a sus dos hijos menores antes de la presentación de la demanda de alimentos.[2]

Entablada la acción judicial, la señora Chévere se dio a la tarea de descubrir la capacidad económica y estilo de vida del señor Levis. Éste, por su parte, se negó a revelar toda información en torno a sus ingresos o fuentes de ingresos bajo el argumento de que aceptaba tener capacidad económica para pagar una pensión alimentaria conforme a las necesidades de los menores. En consecuencia, solicitó una orden protectora a tenor con la Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Luego de una serie de trámites procesales, el tribunal de instancia denegó la solicitud de orden protectora y ordenó al señor Levis a descubrir todos sus ingresos, fuentes de ingresos y gastos. Dicha determinación, sin embargo, fue revocada por el Tribunal de Circuito y dio lugar a que la señora Chévere acudiera ante nos mediante recurso de certiorari Núm. CC-97-313, María Chévere etc. v. Salomón Levis Goldstein.

Respecto a dicho caso, el 15 de marzo de 2000, emitimos una Opinión mediante la cual resolvimos que la obligación del alimentante de descubrir su situación económica en casos relacionados con las pensiones alimentarias para fijar la cuantía a pagar contenida en el

---

[1] Conforme surge en Chévere v. Levis I, supra, la señora Chévere y el señor Levis son los padres legales de los menores María de los Ángeles y Salomón. Las partes nunca han estado casados entre sí y, hasta lo que conocemos, ambos menores se encuentran bajo la custodia de la madre. Cabe destacar además que, junto con la acción de alimentos, la señora Chévere incluyó una acción de filiación respecto al menor Salomón. El menor fue reconocido luego de realizadas las pruebas de paternidad al señor Levis. Así lo hizo constar el Tribunal de Primera Instancia, Sala Superior de San Juan, en su Resolución de 9 de junio de 1997.

[2] Sobre el particular, véase, Informe del Oficial Examinador de 17 de junio de 1997. Conforme surge de éste, las aportaciones que hizo el señor Levis para el sustento de la niña María de los Ángeles fluctuaban desde un mínimo de cinco mil dólares ($5,000) hasta un máximo de treinta mil dólares ($30,000) mensuales. Después del nacimiento del pequeño Salomón, siguió aportando entre diez mil ($10,000) y quince mil dólares ($15,000) mensuales para la manutención de ambos menores.

Art. de la Ley Núm. 5 de 30 de diciembre de 1986, 8 L.P.R.A. sec. 515, conocida como la Ley Orgánica de la Administración para el Sustento de Menores (en adelante Ley de Sustento de Menores) se activa afirmativamente cuando éste se negare a aceptar o esté en duda su capacidad económica. Resolvimos, por tanto, que un alimentante no tiene que someter información sobre sus ingresos en la Planilla de Información Personal y Económica, al aceptar capacidad económica para proveer alimentos. En tales circunstancias, sólo resta identificar las necesidades económicas del alimentista.

Así, pues, luego del Tribunal de Circuito haber emitido su decisión, el caso fue asignado a un oficial examinador en el Tribunal de Primera Instancia, Sala Superior de San Juan.[3] Después de varios días de vistas, éste rindió su informe y recomendó que el señor Levis pagara una pensión alimentaria a los menores por la suma de nueve mil dólares ($9,000) mensuales retroactiva al 1 de diciembre de 1996.[4] Cabe señalar que, conforme a la sentencia emitida por el Tribunal de Circuito, durante la vista, el oficial examinador no permitió desfilar prueba sobre la capacidad económica del señor Levis. Tampoco permitió pasar prueba sobre el estilo de vida de éste.

A raíz del informe, el tribunal de instancia emitió una Resolución el 9 de septiembre de 1997, mediante la cual fijó una pensión alimentaria provisional por la suma que recomendara el oficial examinador retroactiva al 1 de diciembre de 1996. Además, declaró sin lugar la solicitud del señor Levis para que se le acreditara como retroactivo o como pago de honorarios de abogado, la cantidad de ciento un mil ciento ochenta y seis dólares con veintinueve centavos ($101,186.29) o sesenta mil setecientos treinta y siete dólares con seis centavos ($60,737.06) aportados por él para la compra de una casa en la Urb. Parque de Bucaré.[5] Finalmente, el tribunal dispuso que, una vez concluyera el descubrimiento de

---

[3] Debemos puntualizar que mientras el Caso Núm. CC-97-313 Chévere v. Levis I estuvo ante nuestra consideración, tanto las partes como el tribunal continuaron con los procedimientos de fijar una pensión alimentaria provisional.

[4] La vista tuvo lugar del 23 al 27 y 30 de junio y 1 de julio de 1997. La misma se limitó al testimonio de la señora Chévere, excepto breves comparecencias de los testigos Antonio Ortega Dardet (testigo del señor Levis) y Héctor J. Vélez (testigo de la señora Chévere). Ambos testigos fueron utilizados para autenticar y testificar sobre la documentación ofrecida por las partes. El señor Levis estuvo presente en algunas vistas, aunque no permaneció en sala todo el tiempo. Ambas partes estuvieron representadas en todo momento por sus abogados.

[5] Sobre el particular, el tribunal de instancia concluyó:

[e]sa aportación no fue hecha antes de la presentación de este caso; y aunque se alegue que fue un préstamo a la señora Chévere o una inversión conjunta, de la que pueda surgir una deuda de la señora Chévere hacia el demandado, el Art. 149 del Código Civil, 31 L.P.R.A. sec. 568, dispone que los alimentos no pueden compensarse con lo que el alimentista deba al que ha de

prueba y se resolvieran los recursos apelativos pendientes, señalaría una vista para la fijación de una pensión alimentaria permanente.

Inconforme con dicha determinación, el señor Levis acudió ante el Tribunal de Circuito mediante "Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción" y "Recurso de Certiorari". Solicitó que se modificara la pensión alimentaria de nueve mil dólares ($9,000) impuesta por el tribunal de instancia, en una cuantía que no excediera la cantidad de cuatro mil seiscientos treinta y cuatro dólares ($4,634). También solicitó que se le acreditara, como retroactivo o como pago de honorarios de abogado, la suma aportada para la compra de la casa en la Urb. Parque de Bucaré. Con la comparecencia de la señora Chévere, el Tribunal de Circuito emitió una sentencia mediante la cual modificó la cuantía de la pensión alimentaria rebajándola a seis mil dólares ($6,000) mensuales para ambos menores.

Inconforme, la señora Chévere acudió ante nos cuestionando en esencia, la determinación del Tribunal de Circuito de reducir la cuantía de pensión alimentaria provisional fijada por el Tribunal de Primera Instancia.[6]

Mediante Resolución de 30 de julio de 1998, le ordenamos al señor Levis que compareciera y mostrara causa por la cual no debíamos expedir el recurso y revocar el dictamen del Tribunal de Circuito. Ordenamos, además, la paralización de los procedimientos ante dicho Tribunal y dejamos vigente lo resuelto por el foro de instancia en torno a su determinación sobre alimentos provisionales. El señor Levis compareció y con el beneficio de los argumentos de las partes resolvemos sin ulteriores procedimientos, según intimado.

---

presentarlos mucho menos cuando la posible deuda no es del alimentista.

Según surge del Informe del Oficial Examinador, ambas partes seleccionaron la casa en la Urb. Parque de Bucaré y fue comprada a nombre de la señora Chévere. El señor Levis proveyó un adelanto de $10,000 y $91,186.29 al momento del otorgamiento de la escritura de compraventa. El precio total de venta fue de $385,000 de los cuales $283,813.71 se retuvieron para el pago de la hipoteca que gravaba el inmueble. El pago mensual de la hipoteca era de $2,433.92. El señor Levis se comprometió con la señora Chévere a pagar la hipoteca.

[6] Como errores, la señora Chévere planteó los siguientes:

Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Lcda. María Georgina Chévere posee una licencia de Mortgage Broker.

Erró [el] Honorable Tribunal de Circuito de Apelaciones al determinar que la Lcda. María Chévere Mouriño no trabaja y opta por reducir voluntariamente sus ingresos.

Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el máximo que proveen las tablas mandatorias para determinar pensiones alimenticias [sic] es de $10,000.00.

Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el Examinador de Pensiones Alimenticias para la pensión provisional determinada no se basó en las necesidades de los menores sino en las alegadas aportaciones previas del señor Levis a la señora Chévere.

Erró el Honorable Tribunal de Circuito de Apelaciones al reducir la pensión alimenticia provisional de $9,000.00 a $6,000.00 mensuales con retroactividad al 1ro. de diciembre de 1996.

II

La obligación de los padres de alimentar a sus hijos menores está contenida en "principios universalmente reconocidos de solidaridad humana, generados por el derecho natural a la vida e imperativos de los vínculos familiares." Chévere v. Levis I y casos allí citados. Véase, Const. E.L.A., L.P.R.A., Tomo I. Se fundamenta, no sólo en la relación consanguínea existente entre los alimentantes (padres) y alimentistas (hijos), sino también en sentimientos de alta jerarquía espiritual como el amor, el afecto y el cariño. Chévere v. Levis I. Es consecuencia de la relación paterno-filial y se origina desde el momento en que la paternidad o maternidad quedan legalmente establecidos.

Así, pues, el deber de alimentar, de educar y de criar a los hijos menores es producto de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, **sin importar las circunstancias de su nacimiento.** (Énfasis nuestro.) Chévere v. Levis I; Soto Cabral v. E.L.A., 138 D.P.R. 298, 322 (1995). Dicho de otro modo, "el padre y la madre legalmente establecidos como tales, tengan o no la patria potestad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento." Chévere v. Levis I.

A la luz de estos principios que imperan en nuestro ordenamiento jurídico y gobiernan el derecho de familia, debemos analizar la controversia ante nuestra consideración. En particular, ¿cuáles criterios debe considerar un tribunal para imponer una pensión alimentaria, cuando el llamado a alimentar acepta capacidad para pagar la cantidad que se le imponga y por lo tanto, no tiene la obligación de descubrir sus fuentes de ingresos para que se pueda determinar su capacidad económica?

Antes de comenzar a examinar el asunto planteado, pasemos a discutir los preceptos rectores que, en nuestro caso en particular, gobiernan el derecho probatorio.

III

La Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia indirecta o circunstancial.[7] La evidencia circunstancial es intrínsecamente igual a la evidencia directa. Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 788 (1991); Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 145 (1985); Pueblo v. Cancel Peraza, 106 D.P.R. 28 (1977). La norma de derecho con respecto a la evidencia circunstancial es que procede que se dé por probado un hecho

---

[7] Evidencia circunstancial o indirecta es aquella que tiende a demostrar el hecho en controversia probando otro distinto del cual —en unión a otros hechos ya establecidos— puede razonablemente inferirse el hecho en controversia. Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV.

a base de una inferencia, cuando hay una relación racional entre ésta y el hecho básico probado. Así, por ejemplo, a modo ilustrativo y por su valor persuasivo en Estévez v. Superior Court, 27 Cal. Rptr. 2d 470, 475-76 (Cal. App. 2 Dist. 1994) (27 Cal. App. 4th 423 (1994))[8], la Corte de Apelaciones, Segundo de Distrito de California indicó que, en casos donde una persona con ingresos extraordinarios se resiste a un detallado descubrimiento de sus asuntos financieros, el tribunal puede hacer las inferencias que procedan sobre su ingreso disponible y estilo de vida, real o potencial. Sobre el particular, el tribunal resolvió que, **"where the extraordinarily high earner resists detailed discovery o his financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner...."** (Énfasis nuestro.)[9]

A la luz de todo lo anterior, resulta ineludible concluir que en el proceso de fijar una pensión alimentaria para un hijo menor, un tribunal no está limitado a considerar únicamente evidencia directa sobre gastos e ingresos, ya fuere ésta testifical o documental. Puede utilizar además, evidencia circunstancial que le permita inferir, como parte de las necesidades del menor, **el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante.** López v. Rodríguez, 121 D.P.R. 23, 33 (1988). Véase, además, Commonwealth Ex Rel. Travitzky v. Travitzky, 326 A.2d 883, 885 (Penn. 1974).[10] Con este marco doctrinal, analicemos, pues, la controversia ante nuestra consideración.

IV

---

[8] Al igual que dijimos en López v. Rodríguez, 121 D.P.R. 23, 33 (1988), nuestras Reglas de Evidencia provienen de las Reglas de Evidencia federales, las Reglas Uniformes de Evidencia y el Código de Evidencia de California y el Código Modelo de Evidencia. Por su valor persuasivo haremos referencia a la jurisprudencia que bajo reglas similares se ha desarrollado en Estados Unidos.
[9] Este caso trataba de una modificación de pensión alimentaria. El alimentante, Sr. Emilio Estévez, distinto a nuestro caso, admitió que su ingreso anual era de $1.4 millones y que pagaría cualquier cantidad razonable de pensión alimentaria. El tribunal resolvió que si el alimentante aceptaba su capacidad para pagar una pensión alimentaria para sus dos hijos menores, no era necesario considerar, **en detalle**, el estilo de vida de éste ni hacer descubrimiento de prueba sobre sus ingresos. Es decir, "calculation of amount of support called for by child support guidelines [is] unnecessary to resolve amount of child support to be paid by extraordinarily high earner who stipulated that he could and would pay any reasonable amount of child support." Véase, también, White v. Marciano, 190 Cal. App.3d 1026 (1987).
[10] Más aún, para determinar el estilo de vida a que tiene derecho el menor, el tribunal puede considerar la realidad de la economía subterránea que prevalece en Puerto Rico. López v. Rodríguez, supra. Véase, además, Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 412 (1988).

Como ya expresáramos, el asunto que hoy nos compete es uno de alimentos para menores y va dirigido a establecer los criterios que un tribunal debe utilizar al imponer una pensión alimentaria, cuando el llamado a alimentar acepta capacidad económica y, por consiguiente, se le exime, en esa etapa de los procedimientos, de la obligación de descubrir sus fuentes de ingresos.

El Art. 142 del Código Civil, 31 L.P.R.A. sec. 561 dispone que alimentos incluye "todo lo que es **indispensable** para el sustento, habitación, vestido y asistencia médica **según la posición social de la familia**". (Énfasis suplido.) Por vía jurisprudencial, hemos resuelto que la determinación sobre lo que es **indispensable** dependerá tanto de las circunstancias del menor como la situación en particular del padre o madre alimentante, incluyendo los medios económicos y estilo de vida de éstos. López v. Rodríguez, supra.

También, por vía jurisprudencial, hemos resuelto que procede la imposición de los honorarios de abogado a favor de los menores en una acción para reclamar alimentos, sin la necesidad de que el demandado incurra en temeridad al defenderse de la reclamación. Guadalupe Viera v. Morell, 115 D.P.R. 4, 14 (1983) y casos allí citados. Respecto a la educación e instrucción, aunque el Código Civil las ha limitado a la minoridad del alimentista, a través de nuestra jurisprudencia, hemos resuelto que el deber legal de los padres de proveer los medios económicos necesarios para la educación de un hijo es proporcional a los recursos del que los da y la necesidad de quien los recibe y que este deber no cesa, sin más, porque el hijo alcance la mayoría de edad. Key Nieves v. Oyola Nieves, 116 D.P.R. 261, 265 (1985). Véase, también, Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785, 793 (1993).

De otra parte, la cuantía de los alimentos deberá ser fijada tomando en consideración, no sólo las necesidades del alimentista, sino también los recursos que el alimentante tiene a su disposición. Art. 146 del Código Civil, 31 L.P.R.A. sec. 565. Es decir, el padre o la madre o ambos tienen el deber de alimentar a sus hijos menores con arreglo a su fortuna. Art. 153 del Código Civil, 31 L.P.R.A. sec. 601. En otras palabras, al determinar la cuantía de una pensión, el tribunal debe considerar aspectos tales como el estilo de vida del alimentante.[11]

Precisamente, en cuanto al estilo de vida, la jurisprudencia estatal de Estados Unidos ha expresado que la pensión alimentaria debe estar basada en las necesidades de los menores, consideradas éstas a la luz de todas las circunstancias del caso, incluyendo estilo de vida

---

[11] Estilo de vida es todo lo que concierne a obligaciones legítimas preexistentes o bienes adquiridos que no cualifican como gastos necesarios y el que el nivel socio económico le permite a la persona incurrir o adquirir. Estas obligaciones o bienes se caracterizan porque generalmente exceden el costo promedio de obligaciones o bienes similares en el mercado. In re Reglamento para Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal de 30 de junio de 1998.

de los padres.  Así, por ejemplo, en <u>Halum</u> v. <u>Halum</u>, 492 N.E. 2d 30, 33 (Ind. App.3 Dist. 1986) la Corte de Apelaciones (Tercer Distrito) de Indiana señaló:

> Child support should indeed be based on the needs of the children, **but these needs must be considered in light of all of the circumstances in the case including the standard of living and the financial resources of the parents.** (Énfasis nuestro.)  Véase, además, <u>Geberin</u> v. <u>Geberin</u>, 360 N.E. 2d 41, 46 (1979).

Siguiendo esta misma línea de pensamiento, dicha Corte de Apelaciones, en <u>Rohn</u> v. <u>Thuma</u>, 408 N.E. 2d, 578, 582 (Ind. App. 1980) resolvió:

> **It is well established that a child has a right to be supported in a style consonant with the societal position of his parents.  Where circumstances warrant, a child is entitled to more than just the bare necessities of life.** (Énfasis nuestro.)

De otra parte, en <u>Miller</u> v. <u>Schou</u>, 616 So.2d 436, 438 (Fla. 1993) la Corte Suprema de Florida dispuso en cuanto al estilo de vida, lo siguiente:

> The child of a multimillionaire would be entitled to share in that standard of living–for example to attend private school or to participate in expensive extracurricular activities– and would accordingly be entitled to a greater award of child support to provide for these items, even though provisions for such items would not be ordered in a difference case.

En <u>Branch</u> v. <u>Jackson</u>, 629 A. 2d 170, 171 (1993) la Corte Superior de Pennsylvania definió el concepto de lo que constituye "reasonable needs" de la siguiente manera:

> Reasonable needs of child –for purposes of determining child support obligation– are not ... limited to the bare necessities of life. **The reasonable needs of a child whose parent or parents are wealthy may well include items which would be considered frivolous to parents who are less well off.**

Citando con aprobación las expresiones del Juez Robert E. Woodside, en <u>Hetch</u> v. <u>Hetch</u>, 150 A. 2d 139, 143 (1959) dicha Corte expresó:

> ...`necessaries´  and `luxuries´ are relative matters... .
> Children of wealthy parents are entitled to the educational advantages of travel, private lessons in music, drama, swimming, horseback riding, and other activities in which they show interest and ability.  They are entitled to the best medical care, good clothes, and familiarity with good restaurants, good hotels, good shows and good camps.  It is possible that a child with nothing more than a house to shelter him, a coat to keep him warm and sufficient food to keep him healthy will be happier and more successful than a child who has all the 'advantages,' but most parents strive and sacrifice to give their children 'advantages' which cost money.
>
> A wealthy father has a legal duty to give his children the 'advantages' which his financial status indicates to be reasonable....
>
> [A parent] should not be forced by a support order to make personal sacrifices to give them all the advantages to which we referred above, but a father with the assets, the youth, and the ability of the defendant can furnish his children with these advantages without any recognizable sacrifice on his part.

Como hemos podido observar, los tribunales estatales de la jurisdicción norteamericana consistente e **inequívocamente** han establecido que al fijarse la cuantía para una pensión alimentaria, no basta con considerar las necesidades básicas de los menores, sino que también es necesario tomar en cuenta el estilo de vida al cual estuvieron acostumbrados o el cual el padre o madre alimentante pueden ofrecerle.  En virtud de lo anterior dicha jurisprudencia ha enfatizado claramente que **las necesidades razonables de un menor cuyos padres son ricos pueden incluir cosas que pudieran ser consideradas como**

**frívolas por padres de menos recursos económicos ("less well off").** Las necesidades y los lujos son términos relativos. Como bien se expresara en Branch v. Jackson, supra, es posible que un niño con nada más que un techo que le cobije, un abrigo y comida para mantenerlo saludable puede ser más feliz que un niño que tiene todas las ventajas antes mencionadas, pero este hecho no menoscaba el derecho de los menores a recibir las ventajas que la situación económica de los padres permiten. Por otro lado, resulta claro, que si los menores viven con la madre bajo su custodia, ella también se beneficiará de forma indirecta de algunas de las necesidades que se le suplan a los niños, como por ejemplo, vivir en una buena casa, tener un buen carro, disfrutar de viajes con los niños, etc. Esto, sin embargo, no es razón para limitar al menor en su derecho de tener una pensión cónsona con el ingreso y estilo de vida de su padre alimentante. Véase, Branch v. Jackson, pág. 172.

Así, pues, en el proceso de fijar una pensión alimentaria el tribunal **no está ni debe estar** limitado a considerar únicamente la prueba directa relativa a ingresos. Como ya dijéramos, **puede,** considerar aspectos tales como el estilo de vida que lleva el alimentante, las actuaciones pasadas del padre con respecto a los alimentos de dichos menores, el estilo de vida que a otros hijos menores proporciona el alimentante, entre otras cosas.

En resumen, cuando el llamado a alimentar acepta capacidad económica y, por consiguiente, no existe controversia respecto a ésta, la pensión alimentaria deberá ser fijada en virtud de lo establecido en los Arts. 153, 146 y 142 del Código Civil antes citados y reiteramos, **tomando en consideración la condición económica, el estilo de vida del alimentante y las peculiares necesidades de los menores incluyendo el estilo de vida al cual éstos fueron acostumbrados.**

V

De la prueba testifical y documental aquilatada por el Oficial Examinador surgió lo siguiente:

El señor Levis es banquero hipotecario y abogado. La señora Chévere es abogada notario. A la fecha de la vista ante el Examinador, no desempeñaba trabajo alguno.

En relación con los gastos de los menores, del Informe del Oficial Examinador se desprende lo siguiente:

- Éstos viven con su madre en el Condominio Tenerife en el Condado cuyo alquiler es de $3,000 mensuales incluyendo mantenimiento.

- Empleada doméstica "live in maid" que devenga $200 semanales. Además, en ocasiones se le han cubierto gastos de salones de belleza, ya que, según la señora Chévere, la higiene, es un requisito sine qua non para que la empleada pueda cuidar a sus hijos.

- Mercedes Benz, modelo C-220, año 1995, $766 mensuales más $120 mensuales de gastos de mantenimiento. Dicho vehículo fue adquirido conforme a la recomendación que le hiciera

el señor Levis. Anterior a esto, se transportaba en vehículos alquilados a L & M Car Rental, con un gasto mensual promedio de $980.00.

- Electricidad $500, agua $200, alimentos $800, gastos médicos $300, compra de ropa de los niños $500, teléfono, $190, comida fuera del hogar $150, gasolina $100, compra de ropa $800, lavandería $175, cable TV $79, celular $225. Todos estos gastos mensuales.

- Seguro de automóvil $1,848 anuales, cuotas profesionales $150 anuales, entretenimiento $90 anuales, barbería $150 anuales.

Por otra parte, la señora Chévere testificó, entre otras cosas, que desde el nacimiento de la niña, el señor Levis proveía, voluntariamente, un promedio de ocho mil dólares ($8,000) mensuales para su manutención. El máximo pagado fue de treinta mil dólares ($30,000) y el mínimo fue de cinco mil dólares ($5,000) mensuales. Luego del nacimiento del niño, el pago mensual mínimo era de diez mil dólares ($10,000) y el máximo pagado en un mes fue de veintiocho mil dólares ($28,000). El promedio del pago mensual fue estimado en la cantidad de quince mil dólares ($15,000). Finalmente, señaló, que después haber presentado la acción de filiación, el alimentante redujo su aportación mensual a dos mil quinientos dólares ($2,500).

La señora Chévere también declaró que desde los comienzos de la relación, el señor Levis ha sido un proveedor excelente. Señaló que en Miami, Florida, cubrió todos los gastos médicos de su embarazo, transportación, vivienda, alimentos y empleada doméstica. Expresó que en Miami vivía en Doral Point con un alquiler mensual de $1,300. Cuando regresó a Puerto Rico residió en el Condominio La Ceiba del Condado con un alquiler también pagado por el señor Levis de $1,500. Finalmente testificó que tanto en Miami como en Puerto Rico tenía empleada doméstica que el señor Levis le requería para que ella pudiera darle mayor atención a sus hijos.

La prueba no rebatida estableció que el señor Levis proveyó una cantidad mínima de cinco mil dólares ($5,000) mensuales desde el nacimiento de su primera hija con señora Chévere para el 1994. El máximo pagado para ese mismo año fue de treinta mil dólares ($30,000). El pago promedio provisto por el señor Levis era de ocho mil dólares ($8,000).

Luego de que naciera el niño en 1995, el pago máximo de pensión alimentaria fue de diez mil dólares ($10,000) y el máximo pagado en un mes fue de veintiocho mil dólares ($28,000). El promedio del pago mensual por ambos menores era de quince mil dólares ($15,000). Como hecho adicional, algunos pagos mensuales cubrían los gastos de pasajes y estadía para la madre y lo menores para visitar al demandado cuando éste viajaba fuera de Puerto Rico. Sin embargo, luego de la presentación de la acción filiatoria del menor Salomón, el demandado limitó su pago mensual a dos mil quinientos dólares ($2,500).

Surge con meridiana claridad que en vista de tales aportaciones, sus hijos desarrollaron un estilo de vida extraordinariamente alto, es decir, opulento. El señor Levis definió

sus necesidades en términos de esas aportaciones, como un promedio de quince mil dólares ($15,000) mensuales para los tres.

Ciertamente, a la luz de los hechos probados, una persona razonable, fundándose precisamente en la razón y la experiencia, puede, lógicamente inferir el estilo de vida de los dos (2) hijos menores del señor Levis siendo esto parte de las necesidades que el padre alimentante viene obligado a cubrir. Por consiguiente, se puede colegir que los alimentos provisionales concedidos por el foro de instancia constituyen una determinación razonable de las necesidades de los menores.

Es menester reiterar que para determinar si la cuantía fijada por un tribunal es razonable o no, un tribunal debe evaluar **no sólo las necesidades de los menores, sino también todas las circunstancias que definen dichas necesidades incluyendo el estilo de vida que éstos disfrutaron o al que fueron acostumbrados**.

**A tenor con todo lo antes expuesto, no cabe duda que el señor Levis es multimillonario, disfruta de una elevada condición social y tiene la capacidad económica para pagar cualquier pensión alimentaria razonable que sea fijada en este caso. En consecuencia, los menores alimentistas gozan de una elevada vida social y tienen derecho a que la pensión alimentaria incluya suficientes medios económicos para disfrutar del estilo de vida que esa condición social de ellos amerita. Es decir, tienen derecho a disfrutar, como niños, de aquellas comodidades, privilegios y lujos que ordinaria y razonablemente disfrutan otros niños de su misma edad y condición social.**

Al evaluar la cuantía fijada por el tribunal de instancia, el Tribunal de Circuito enmarcó su análisis sólo en parte de las necesidades de los menores y no en la totalidad de las circunstancias que rodean a dichos menores. En consecuencia, erró dicho tribunal al modificar la cuantía otorgada por el foro de instancia.

Por los fundamentos antes expuestos, se expide el recurso solicitado, se dicta sentencia revocando la emitida por el Tribunal de Circuito y confirmando el dictamen del Tribunal de Primera Instancia. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí expresado.

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María G. Chévere Mouriño

    Peticionaria

       v.                          CC-1998-634

Salomón Levis Goldstein

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.

San Juan, Puerto Rico, a 3 de noviembre de 2000

      Por los fundamentos expuestos en la Opinión que antecede, se expide el recurso solicitado, se dicta sentencia y se revoca la emitida por el Tribunal de Circuito de Apelaciones. Se confirma el dictamen del Tribunal de Primera Instancia y se devuelve el caso a dicho tribunal para que continúen los procedimientos de forma compatible con lo aquí resuelto.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no interviene. El Juez Asociado señor Hernández Denton está inhibido.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo