Feliciano Acevedo, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Brenda Socorro Montano (en adelante la apelante) solicita la revisión de una resolución proveniente del Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante el TPI), Hon. Ana M. Higginbotham J., *1084 emitida el 1 de noviembre de 2005, archivada, y notificada el 4 de noviembre de 2005, sobre alimentos.
I
La apelante nos solicita revoquemos la pensión alimentaria impuesta de trescientos un dólares ($301.00) mensuales para beneficio de su hijo menor de edad (en adelante el menor). Pagada la misma por conducto de ASUME, siendo efectiva el 1ro de junio de 2003. A dicha fecha se ordenó al Sr. Croberto Antonio Soler Rodríguez (en adelante Soler) a pagar la suma retroactiva de doscientos veintiún dólares ($221.00), así como proveer plan médico para beneficio del menor.
Basándonos en los hechos pertinentes y el trasfondo procesal que expondremos a continuación, revocamos la Resolución apelada.
II
El recuento procesal del presente caso bien podemos remontarlo al 16 de enero de 2003, cuando la parte apelante presentó ante el TPI una “Moción Solicitando Aumento de Pensión Alimentaria” contra Soler, por incremento en las necesidades del menor y el transcurso de más de tres (3) años desde la fijación de la pensión impuesta.
La vista ante la Examinadora de Pensiones Alimentarias (la Examinadora) fue celebrada el 3 de junio de 2003; su recomendación al Tribunal fue la siguiente:

"Aumentar de forma provisional a $301.00 la pensión alimentaria para beneficio del menor alimentista Roberto A. Soler Montano. El aumento provisional de la pensión alimentaria deberá ordenarse sea efectivo a Iro de junio de. 2003, fecha en que se solicitó. Se debe ordenar que la pensión alimentaria continúe siendo provista mediante depósitos por adelantado en los lugares designados por la Administración para el Sustento de Menores (ASUME).

Ordenar a la parte alimentante proveer plan médico hospitalario para beneficio del menor alimentista.

Ordenar a la parte alimentante pagar directamente a la parte alimentista $221.00 por concepto del efecto retroactivo de la pensión alimentaria en o antes del 15 de junio de 2003, según acordó.

Señalar vista ante la Examinadora de Pensiones Alimentarias para el 21 de agosto de 2003 a las 8:30 de la mañana.

Se recomienda, además, advertir a la parte alimentante sobre el hecho de que si incumple con cualquier pago de la pensión alimentaria provisional, el Tribunal podría encontrarlo incurso en desacato y ordenar su encarcelamiento. ”

Véase Exhibit VII, páginas 19 y 20 del Apéndice del escrito de Apelación.
El 11 de junio de 2003 el Tribunal, por Resolución, acogió las recomendaciones del TPI y señaló vista nuevamente ante la Examinadora para el 21 de agosto de 2003, a las 8:30 de la mañana.
Luego de un extenso descubrimiento de prueba y varios incidentes procesales, la vista quedó pautada para el 26 de agosto de 2004.
La apelante compareció personalmente y asistida de representación legal. Soler compareció personalmente y representado por abogado. Además, se sometió prueba documental.
*1085 Compareció el Sr. Luis Antonio López López, Contable de Soler. De la abundante prueba documental sometida estaban cheques, estados de cuentas, estados de situación de ingresos y gastos operacionales del negocio de Soler, quien se dedica a la agricultura.
El TPI determinó que la pmeba sometida por las partes y examinado el expediente del caso, no existía razón de hechos y/o de derechos para variar la determinación previamente tomada. Como resultado de ello, mantuvo la pensión alimentaria en la suma de $301.00 pagaderos por mensualidades anticipadas, a través de ASUME, dentro de los primeros cinco (5) días de cada mes.
La apelante presentó Solicitud de Determinaciones de Hechos y Derecho, posteriormente, Moción de Reconsideración.
El 13 de enero de 2006, la Honorable Juez que dispuso del asunto de pensión alimentaria emitió Orden y declaró No Ha Lugar a la “Solicitud de Determinaciones Adicionales de Hechos y Derecho”; “Moción de Costas”; “Moción de Reconsideración”. Enterado a “Moción Objetando Moción de Costas”', Reacción sobre Moción Objetando Costas; Moción Informativa.
Ante este cuadro fáctico, la parte apelante presentó escrito de apelación. Ordenamos la transcripción de la prueba oral de la vista en su fondo y autorizamos la regrabación de los procedimientos ante el TPI. Concedimos a Soler un término de veinte (20) días, a partir de la presentación de la transcripción, para presentar su posición en torno a los señalamientos de error discutidos en el recurso. Obra en el expediente la transcripción de la vista y los alegatos de las partes.
Inconforme, la apelante aduce los siguientes señalamientos de error:

“I. ERRÓ EL TRIBUNAL DE INSTANCIA AL FIJAR UNA PENSIÓN EN $301.00 Y NO CONSIDERAR LOS INGRESOS DEL APELADO CONFORME LAS PLANILLA (SIC) DE INGRESOS SOMETIDO AL ESTADO Y AL NO CONSIDERAR LOS DEPÓSITOS QUE HA REALIZADO EN EL BANCO, ESTILO DE VIDA DEL ALIMENTANTE Y LA EXISTENCIA DE UNA ECONOMÍA SUBTERRÁNEA.

2. ERRÓ EL TRIBUNAL AL NO FIJAR A FAVOR DE LA APELANTE EL PAGO DE HONORARIOS DE ABOGADO Y EL PAGO DE LAS COSTAS SEGÚN PRESENTA BAJO JURAMENTO EN EL TRIBUNAL. ”

Por los fundamentos que expresamos a continuación y conforme al derecho vigente, revocamos la determinación del TPI de noviembre 1ro de 2005.
III
Como se sabe, el derecho de los hijos a recibir alimentos, y la correlativa obligación de los padres a darlos cuando corresponda, tiene su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de las personas por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada. Torres Peralta, La Ley Especial de Sustento a Menores y el Derecho de Alimentos en Puerto Rico, 1997, pág. 1.1; Rodríguez v. Departamento de Servicios Sociales, 132 D.P.R. 617 (1993).
Por tal razón, los casos de alimentos a hijos menores de edad están revestidos del más alto interés público. Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993); Robles v. Otero de Ramos, 127 D.P.R. 911 (1991); López, v. Rodríguez, 121 D.P.R. 23 (1988); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987).
La obligación de ambos padres de proveer alimentos a sus hijos menores de edad, no emancipados, emana de las disposiciones de los Artículos 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. § 562 y 601, *1086 respectivamente, y del Artículo 4 de la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A., See. 503.
El concepto de alimentos, según lo define el Artículo 142 del Código Civil (31 L.P.R.A. See. 561), incluye todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia. Comprende, además, la educación del alimentista. Esta enumeración que hace el Código cubre todas las necesidades básicas de un ser humano, tanto físicas como intelectuales. Viera v. Morell, 115 D.P.R. 4 (1983).
El Artículo 153 del Código Civil, supra, dispone que el padre y la madre tienen, respecto de sus hijos no emancipados, el deber de alimentarlos, tenerlos en su compañía, educarlos, instruirlos, con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
De otra parte, la cuantía de los alimentos deberá ser fijada tomando en consideración, no sólo las necesidades del alimentista, sino también los recursos que el alimentante tiene a su disposición. Art. 146 del Código Civil, 31 L.P.R.A., See. 565. Es decir, el padre o la madre de ambos tienen el deber de alimentar a sus hijos menores con arreglo a su fortuna. Art. 153 del Código Civil, 31 L.P.R.A., See. 601.
Entre los criterios que puede utilizar un tribunal para imponer la fijación de una pensión alimentaria, están las necesidades del menor, el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante, la capacidad del alimentante para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. Chévere Mouriño v. Levis Goldstein; 152 D.P.R. 492 (2000); López v. Rodríguez, 121 D.P.R. 23, (1988); Argüello López, López Peña v. Argüello García, supra; Rodríguez Rosado v. Zayas Martínez, supra.
En cuanto al aspecto personal, el Artículo 18 de la Ley Orgánica de ASUME, 8 L.P.R.A., Sección 517, dispone que ante una solicitud de fijación o modificación de pensión alimentaria, el oficial examinador celebrará una vista donde recibirá la evidencia pertinente y dentro de veinte (20) días someterá al tribunal un informe con determinaciones de hechos, conclusiones de derecho y sus recomendaciones. Dicho informe será remitido al juez de instancia, el cual podrá hacer suyas las determinaciones, conclusiones y recomendaciones del oficial examinador o elaborar las propias, con o sin vista previa. 8 L.P.R.A.
En los casos de alimentos de menores, los cuales están revestidos del más alto interés público, corresponde a los tribunales velar por el bienestar de esos menores de edad. Sin embargo, ello no debe ser óbice para que se violenten derechos fundamentales como lo es el derecho aun procedimiento justo, imparcial y equitativo, donde se haya garantizado un debido proceso de ley a las partes concernidas. Rexach v. Ramírez, 162 D.P.R. 130 (2004); Valencia, Ex parte 116 D.P.R. 909, 912 (1986).
Se ha señalado que respecto a los menores de edad, el derecho de éstos a recibir alimentos es parte esencial del principio natural de conservación que constituye piedra angular del derecho constitucional a la vida. Chévere v. Levis, supra, a las págs. 534-535.
Cuando un alimentante acepta tener capacidad económica para proveer alimentos, éste queda exento del requisito de someter información sobre sus ingresos en la PIPE, quedando pendiente de resolver solamente las necesidades del alimentista para así fijar su pensión alimentaria. Abundando al respecto, se ha expresado que:

“[...] Ahora bien, cuando el alimentante acepta tener capacidad económica, luego no puede impugnar la pensión que haya sido fijada conforme a las necesidades razonables del alimentista alegando que él no tiene 
*1087
capacidad, económica para pagarla. (Énfasis suplido).

Es decir, que aún cuando el alimentante que aceptó tener capacidad económica para alimentar esté exento de someter información sobre sus ingresos, el tribunal, al fijar la pensión, debe tomar en consideración las necesidades razonables de los alimentistas.” (Énfasis suplido).
Es un hecho incontrovertible que estamos ante un caso de alto interés público, pues se trata del aumento de la pensión alimentaria de un hijo, menor de edad, de la apelante.
Por lo tanto, no debemos ignorar el proceso de ley que requirió dicho trámite sobre alimentos en el foro apelado, sus múltiples señalamientos y requerimientos de órdenes al apelante. Considerando que demoró en cumplir con los múltiples requerimientos de la examinadora de pensiones alimentarias para determinar si aceptaba su capacidad económica y el requerimiento de llenar la PIPE. Dicho trámite fue culminado en vista evidenciaría celebrada, en la cual comparecieron ambas partes.
Colegimos, pues, que el debido proceder de la Examinadora era celebrar una vista evidenciaría a esos efectos, lo cual cumplió. Luego de que la examinadora rindió su informe, el TPI podía hacer suyas las determinaciones, conclusiones de derecho con o sin vista previa, y emitir la orden, resolución o sentencia que correspondía, la cual sería notificada al alimentante y alimentista, o al Secretario de la Familia, según sea el caso. íd.; Véase además, Ixa López Palau, La Pensión Alimentaria de los Hijos en Puerto Rico, Ediciones Lego, 1998, p. 87.
Al respecto, dice Chévere v. Levis, supra, que:

“Un alimentante queda exento del requisito de someter información sobre sus ingresos en la ¡PIPE] si acepta que tiene capacidad económica para proveer alimentos, quedando pendiente de resolver solamente las necesidades económicas del alimentista para así fijar la pensión alimentaria del alimentista. ”

De la lectura de la transcripción, se desprende que Soler tuvo ingreso de $110,928.00 en la planilla de 2003 y de $103,083.00 en la planilla del 2001. Además consignaciones bancarias por $100,000.00. Veamos ¡a transcripción, páginas 14, 15, 16 y 17, 19, 20 y 21, 82, 93, 162 y 165:
PÁGINAS 14,15,16 Y 17:

“LCDO. RODRÍGUEZ: ¿No indicó que tuviera ningún otro sueldo? ¿ Verdad que no?

R. Bueno, el sueldo mío, el de la agricultura, el que menciona la planilla.

LCDO. RODRÍGUEZ: Por eso. ¿Pero no indicó que tuviera ningún otro sueldo, parte de los $1,800.00? ¿No?

R. El resultado del...

LCDO. RODRÍGUEZ: Mire. ¿Ciertamente para el año 2003, usted presentó, hizo unas consignaciones de dinero en el banco, verdad que sí?

R. Sí.

LCDO. RODRÍGUEZ: Le preguntamos, ¿si esa consignación en el banco suman la cantidad de más de $100,000.00?

*1088
R. (...)

LCDO. RODRÍGUEZ: Con la voz.

R. Sí.

LCDO. RODRÍGUEZ: ¿Verdad que sí? ¿Y usted presentó e hizo una planilla, la presentó en Hacienda-para el año 2003, correspondiente al año 2003, el ingreso 2003, verdad que sí?

R. Sí.

LCDO. RODRÍGUEZ: Que se marque.

LCDO. ORTIZ: No hay reparos que se admita, honorable juez, si es que el compañero se propone ...

LCDO. RODRÍGUEZ: Sí, la vamos a someter, Su Señoría.

HON. JUEZ: Esa es la planilla de don Croberto del año 2003.

Que se tome, entonces, como Exhibit I.

LCDO. ORTIZ: Incluso puede marcarse como que es por estipulación.

HON. JUEZ: Ok. Así se hará. Que sea marcada por estipulación.

LCDO. RODRÍGUEZ: Que se le muestre a ... Por favor, lea ese documento.

HON. JUEZ: Permanezca con él.

LCDO. RODRÍGUEZ: ¿Vio el documento?

R. Sí.

LCDO. RODRÍGUEZ: ¿Esa es su planilla del 2003?

R. Sí.

LCDO. RODRÍGUEZ: Esa planilla, ¿quién se la llenó?

R. El señor Luiggi... Luis López, me la llenó.

LCDO. RODRÍGUEZ: ¿Se encuentra aquí?

R. Se encuentra presente.

LCDO. RODRÍGUEZ: Que se encuentra presente. ¿Lo cierto es que ese es el contable de su papá, verdad que si?

R. Sí, es correcto.

*1089
LCDO. RODRÍGUEZ: ¿Y ha sido el contable de su padre por muchos años?

LCDO. ORTIZ: Yo tengo reparos en esa línea, honorable, porque entiendo que es impertinente.

HON JUEZ: Ha lugar.

LCDO. RODRÍGUEZ: Mire. ¿Es la primera vez que él le llena esta planilla?

R. ¿Él?

LCDO. RODRÍGUEZ: ¿Las planillas anteriores él no las había llenado?

R. Me había llenado... Me había llenado otra persona, pero no la había llenado él.

LDCO. RODRÍGUEZ: No la había llenado él. En la ... En cuanto a ingresos se refiere, ¿usted está informando un total de ingresos de $110,928.00?

R. Eh... Eso...

LCDO. RODRÍGUEZ: ¿Si es o no cierto que usted está informando un ingreso de $110,928.00?

R. Habría que sacar los gastos. Eso no es el ingreso.

LCDO. RODRÍGUEZ: Mire. ¿Mire a ver. si de conformidad a la página ... a la antepenúltima página, donde dice total de ingresos, suma una ... línea J y 2, dice $110,000... ”

PÁGINAS 19, 20 Y 21:

“LCDO. RODRÍGUEZ: Mire. ¿Mire a ver si es o no cierto que en esa página de ingresos dice unos ingresos totales de $110,928.00?

R. ¿Puedo explicar una cosa?

LCDO. RODRÍGUEZ: Mire. La pregunta es...

HON JUEZ: Conteste únicamente, Don Croberto, lo que se le está preguntando.

LCDO. RODRÍGUEZ: ¿Si es o no cierto que ahí dice total de ingresos en esa cantidad donde aparece $110,928.00?

R. Eso dice ahí, correcto.

LCDO. RODRÍGUEZ: ¿Verdad que sí? ¿Sin embargo, usted en la planilla informativa personal y económica le informa al Tribunal bajo juramento que los ingresos son $1,800.00, en términos brutos, verdad que sí?

R. (...)

LCDO. RODRÍGUEZ: ¿Eso es así?

R. Sí. No nos estamos entendiendo.

*1090
LCDO. RODRÍGUEZ: Usted en la planilla informativa personal y económica hace alusión a un Toyota Nissan. Esa Toyota Nissan, ¿de qué año es?

R. Eli...2002.

LCDO. RODRÍGUEZ: 2002. ¿Díganos si es o no cierto que el costo de esa Toyota Nissan es aproximadamente $42,000.00?

R. No es cierto.

LCDO. RODRÍGUEZ: ¿No es cierto? ¿Usted nos hizo entrega de unos documentos relacionados con la compra de ese vehículo, verdad que sí?

R. (...)

LCDO. RODRÍGUEZ: ¿Eso es cierto?

R. Exacto.

LCDO. RODRIGUEZ: ¿Y ese vehículo se compró en Auto Furiel?

R. Sí, correcto.

LCDO. RODRÍGUEZ: ¿ Y en ese... ese vehículo se aportó $15,000.00 de pronto?

R. Sí.

LCDO. RODRÍGUEZ: ¿ Verdad que sí?

R. Sí.

LCDO. RODRÍGUEZ ¿ Y de ese vehículo se aportaron $10,000.00 en efectivo y $5,000.00 y pico en cheque ?

R. $10,000.00 en cheque.

LCDO. RODRÍGUEZ: ¿$10,000.00 en cheque?

R. Correcto. Y $5,000.00 un carro en trade-in.

LCDO. ORT1Z: ¿$5,000.00 en qué?

R. Un carro en trade-in que tenía mi esposa.

LCDO. ORTIZ: ¿ ”Trade-In?

R. Perdóname. Fueron $10,000.00 no $15,000.00. ”

PÁGINA 82:

“LCDO. ORTIZ: Mire. Esa suma de $110,000.00 que le mencionó el compañero como ingresos que refleja su 
*1091
planilla, yo le pregunto, ¿si ese es el dinero que llegó a sus bolsillos?

R. Bueno... ciento... $110,000.00...

LCDO. RODRÍGUEZ: Su señoría, sugestivo. Podemos permitir otras preguntas que sean, este, sugestivas, porque podríamos permitirlo, pero esa va al punto cardinal del cual se trata aquí y es su cliente.

HON. JUEZ: Ha lugar.

LCDO. ORTIZ: Cómo no. De esos $110,000.00, dígale a la honorable juez, ¿cuántos finalmente llegaron a su bolsillo ?

R. Lo que refleja la planilla. ”

PÁGINA 93:

“LCDO. RODRÍGUEZ: ¿ Usted le dice al Tribunal que lo que le sobró fueron los $10,000.00 que se reflejan... o el dinero que se refleja en la planilla ?

R. Lo que se refleja en la planilla.

LCDO. RODRÍGUEZ: ¿Sí?

R. Aproximadamente.

LCDO. RODRÍGUEZ: Y con relación al 2002, ¿también es lo que se refleja en la planilla?

R. Eso es así.

LCDO. RODRÍGUEZ: Mire. Y entonces, ¿en el 2002 se reflejó $3,000.00 o eso fue lo que usted recibió $3,000.00?

R. Eso es así.

LCDO. RODRÍGUEZ: Mire. ¿Y con esos $3,000.00, usted pudo haber comprado y dado $16,000.00 para comprar un tractor?

R. Bueno, todo, todos los gastos, o sea, están incurridos en..., con sus cheques durante el año de trabajo.

LCDO. RODRÍGUEZ: Mire. La pregunta es, ¿si con la sobra de $3,000.00 usted pudo sacar $16,000.00 para compra de un tractor?

R. Es que no nos estamos entendiendo. No. ’’

PÁGINA 162:

“LCDO. RODRÍGUEZ: Aquí básicamente, con relación a su evaluación y el cómputo de contabilidad que usted hace, usted, lo que sobró lo que sobró finalmenté del negocio que le quedó a don Croberto, ¿eso usted lo traspasa a él como ingreso neto ?

*1092
R. Correcto. Ingreso en aspecto, en aspecto contable.

LCDO. RODRÍGUEZ: Que la ... ¿Usted tiene la planilla consigo, verdad?

R. Sí señor.

LCDO. RODRÍGUEZ: ¿Que es de ingresos del 2003? ¿usted informa también la misma cantidad de ingresos, $110,928.00...”

PÁGINA 165:

“R. Si hay otro depósito de otra cosa, no está reflejado en esos $100,000.00, $110,000.00.

LCDO. ORTIZ: Si el Tribunal...

R. Es venta, exclusivamente venta.

LCDO. ORT1Z: ¿Ventas? Bien. Dígame. ¿Coincide en números lo que usted figuró como ventas y lo que aparece en los estados bancarios ?

R. Yo tengo ese análisis. No lo tengo aquí ahora mismo, pero estoy seguro que fue menos. Menos que...

LCDO. ORTIZ: ¿Quéfue menos qué? ¿Los estados bancarios?

R. Sí. Los estados bancarios representan menos depósitos por concepto de ventas, que lo dicen los estados.

LCDO. ORTIZ: Bien. ¿Y, entonces, usted figura unos nuevos... unos ingresos por concepto de venta superiores a lo que dice...

R. Superiores, claro. Porque hay unas cuentas por cobrar.

LCDO. ORTIZ: ... los estados bancarios?

R. Y no solamente esa, la cuenta a cobrar, que hay algunos gastos pequeños que se incurrieron,...”

Ante tal situación, entendemos que el TPI no consideró el estilo de vida de Soler. Para determinar la capacidad económica de cada alimentante, el TPI no estaba limitado a considerar sólo en evidencia la prueba testifical y documental de los ingresos; en la cuantía de pensión a imponer pudo haber tomado en cuenta el estilo de vida llevado por Soler, su capacidad para generar ingresos, la naturaleza y cantidad de sus depósitos bancarios al igual que las fuentes de ingreso como agricultor, demostrándose en el presente caso la economía subterránea.
El Tribunal Supremo ha establecido que los tribunales apelativos no intervendrán con la apreciación de la prueba desfilada o con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. S.L.G. Rodríguez v. Nationwide Insurance, 156 D.P. R. 614, 630 (2002); Rolón García v. Charlie Car Rental, Inc., 148 D.P.R. 420 (1999); López Vicil v. I.T.T. Intermedia, Inc., 142 D.P.R. 857 (1997); Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982). También, ha enfatizado que “un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. ” Argüello v. Argüello, 155 D.P.R. 62, 79 (2001). Véase, además, Rolón v. Charlie Car Rental, Inc., ante, a la pág. 433.
*1093 Esta norma de deferencia es particularmente cierta cuando están involucradas cuestiones altamente subjetivas, ya que el juzgador de los hechos que oyó y vio declarar a los testigos y apreció su comportamiento en la silla testifical, es quien está indudablemente en mejor posición para aquilatar la prueba testifical desfilada. López Vicil v. I.T.T. Intermedia, Inc., ante.
Claro está, la norma antes expuesta no implica que los juzgadores de instancia sean inmunes a cometer errores ni que tales determinaciones sean inmutables. El arbitrio del juzgador, aunque respetable y merecedor de deferencia, no es absoluto. La apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. En dicha función revisora, el tribunal apelativo, por vía de excepción, puede descartar las determinaciones de hechos del Tribunal de Primera Instancia cuando éstas no representan el balance más racional, justiciero y jurídico de la totalidad de la prueba que desfiló ante dicho tribunal. Véanse, Méndez v. Morales, 142 D.P.R. 26 (1996); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982).
Erró el TPI en su apreciación de la prueba, que este no fue el balance más justiciero porque el estilo de vida del apelado denota que generó más ingresos de los informados.
IV
Por todas las razones antes expresadas, revocamos la resolución emitida por el Tribunal de Primera Instancia, Sala de Guayama, de fecha 1 de noviembre de 2005 y notificada a las partes el 4 de noviembre de 2005.
Ordenamos se celebre vista dentro de los treinta (30) días de recibirse el mandato para que se fije la pensión alimentaria conforme a lo aquí resuelto, tomando en consideración los ingresos y el estilo de vida del apelante y se asignen honorarios de abogado y pago de las costas, según presentado bajo juramento en el Tribunal.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones