EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Marisol Santiago Texidor<br>Carlos Maisonet Correa<br>      Peticionarios<br><br>            v.<br><br>Carlos Maisonet Correa<br>      Recurridos | Certiorari<br><br>2012 TSPR  187<br><br>187 DPR ____ |

Número del Caso: AC-2010-105


Fecha: 12 de diciembre de 2012


Tribunal de Apelaciones:

        Región Judicial de Guayama, Panel XI


Abogada de la Parte Peticionaria:

        Lcda. Rosa Ward Cid


Abogada de la Parte Recurrida:

        Lcda. Zoraida Lanausse



Materia: Divorcio



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marisol Santiago Texidor
Carlos Maisonet Correa                          Certiorari
        Peticionarios

              v.                        AC-2010-0105

Carlos Maisonet Correa
        Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 12 de diciembre de 2012.

El peticionario Carlos Maisonet Correa (señor Maisonet o padre no custodio), quien aceptó capacidad económica para pagar la pensión de sus hijos, nos solicita que determinemos la forma correcta de adjudicar la aportación económica que le correspondería asumir a la persona custodia en estos casos. El recurso que hoy atendemos nos brinda la oportunidad de aclarar ciertos vacíos normativos que surgieron a raíz de la norma jurisprudencial que postula que los alimentantes que aceptan capacidad económica no están obligados

a descubrir su información económica. Así también, nos expresamos en torno a la jurisdicción del Tribunal de Primera Instancia para imponer una pensión en casos en que al momento en que se celebra la vista evidenciaria para ello, el menor ya ha alcanzado la mayoría de edad, pero continúa cursando estudios universitarios y no ha presentado una petición de alimentos a nombre propio.

I

Los hechos de este caso son sencillos y sobre los mismos no existe controversia.

La Sra. Marisol Santiago Texidor (madre custodia o señora Santiago) y el señor Maisonet –divorciados en el 1994– procrearon dos hijos quienes al momento de los hechos que originaron este pleito vivían bajo la custodia de la señora Santiago. Como parte de su obligación alimentaria, el señor Maisonet estuvo pagando una pensión de $1,200.00 mensuales a favor de los menores.[1]

Tiempo después, en el 2006, la señora Santiago en representación de sus hijos presentó ante el Tribunal de Primera Instancia (TPI) una moción sobre revisión de pensión alimentaria. Allí detalló que estos habían comenzado estudios universitarios por lo que entendía que se debía modificar la pensión a la luz de sus nuevas necesidades. Durante ese trámite, también peticionó una orden para que el patrono del señor Maisonet proveyera

---

[1] Esta pensión surge de la Resolución que decreta el divorcio por consentimiento mutuo. Véase, Apéndice de la petición de *certiorari*, pág. 96.

cierta información relacionada a los ingresos que este último devengaba. Así las cosas, más adelante, el señor Maisonet aceptó tener capacidad económica para satisfacer la pensión alimentaria que en su día otorgara el tribunal.

Luego de varios trámites procesales, se señaló la vista evidenciaria ante la Examinadora de Pensiones Alimentarias (EPA). Cabe mencionar, que si bien al momento en que la señora Santiago sometió la petición de modificación de alimentos ambos hijos eran menores de edad, al celebrarse la vista, la hija mayor de las partes había cumplido 21 años. Este hecho quedó consignado en el informe que posteriormente rindió la EPA.

En esa audiencia, la señora Santiago reportó que devengaba un sueldo bruto de $9,939 y uno neto de $5,271.00 mensuales. Además, informó que incurría en los siguientes gastos para atender las necesidades de los menores: $985 mensuales por concepto de vivienda; $6,226.00 anuales por concepto de matrícula para educación; $929 para el pago de un apartamento que compró para que se hospedaran sus hijos por motivo de estudios; $130.00 correspondientes al pago de agua y luz para ese hospedaje; $50.00 para una compra semanal para el hospedaje y $1,208.00 por concepto de gastos de transportación.

Evaluada la prueba, la EPA emitió su informe sugiriendo una pensión de $3,741 mensuales, recomendación que posteriormente fue acogida por el TPI. De dicha

decisión el alimentante solicitó que se determinaran hechos adicionales, entre estos, que no se consideró el ingreso de la señora Santiago al momento de calcular la pensión alimentaria y arguyó que se le impuso el pago del 100% de los gastos de sus hijos.

Atendidos los planteamientos enunciados, la EPA emitió un segundo informe en el que formuló, en lo pertinente, los siguientes hechos:

1. En cuanto a no considerar el ingreso de la madre no custodio, Véase Chévere v. Levis.

2. De los gastos básicos solo se le imputó la participación de los menores, en la suplementaria se imputó la totalidad. El padre asumió capacidad.

3. Los menores viven con su madre y se hospedan por razón de estudios en el área metropolitana.

Por consiguiente, la cantidad de pensión que se le ordenó pagar al alimentante permaneció inalterada. Nuevamente, el TPI hizo suyas esas recomendaciones.

Inconforme, el señor Maisonet acudió al Tribunal de Apelaciones alegando que el TPI había errado al negarse a considerar los ingresos de la madre custodia sin imponerle a esta una participación monetaria en la obligación de alimentar a los hijos. También, apuntó que incidió al adjudicar la pensión a favor de la hija mayor a pesar de que esta había advenido a la mayoría de edad al momento en que se celebró la vista ante la EPA.

Atendido el recurso, el foro intermedio resolvió que el primer señalamiento era inmeritorio por cuanto el

alimentante no había establecido en su recurso de apelación cuáles eran los gastos totales de los menores, esto, de manera que se pudiera entonces evaluar qué proporción de esos gastos representaba la pensión que se le fijó. Añadió que

> [i]ndependientemente de ello, hay gastos que no forman parte de las determinaciones de hechos efectuadas por el TPI y que por lo tanto no serán sufragadas por el Apelante. De forma principal podemos mencionar, entre otros, gastos en la residencia principal por concepto de agua, luz, mantenimiento, teléfono, contribuciones sobre la propiedad y alimentos. En relación directa a los menores, los gastos de alimentos fuera del hogar, ropa, teléfono, internet, entretenimiento, visitas medicas, medicinas, libros, materiales de estudio, gasolina, mantenimiento de auto, barbería, salón de belleza, estacionamiento, actividades extracurriculares. En ausencia del contexto total de los gastos de los menores, no podemos asumir, que la pensión fijada al Apelante cubre **todos** sus gastos y por lo tanto la Apelada no aporte nada. (Énfasis en el original)

En cuanto al asunto de la falta de jurisdicción del TPI, el Tribunal de Apelaciones indicó que al momento de celebrarse la vista ambos hijos eran menores. Por ello, adujo que el foro primario tenía la obligación de establecer una pensión para ellos, correspondiéndole entonces al alimentante solicitar una modificación de pensión a esos efectos.

Inconforme con ese proceder, acude ante nos el señor Maisonet señalándonos que:

> **Erró el Honorable Tribunal de Apelaciones al confirmar la decisión del Tribunal de Primera Instancia de negarse a considerar los ingresos de la madre custodia y no imponerle a esta una participación monetaria en la obligación de alimentar a los menores, contrario a lo resuelto en la mayoría de los paneles de ese tribunal.**

**Erró el Honorable Tribunal de Apelaciones al confirmar la decisión del Tribunal de Primera Instancia de establecer una pensión alimentaria para la hija mayor de las partes, a pesar de carecer ya para ese momento, de jurisdicción sobre la materia en cuanto a esta hija.**

Acogido el recurso como uno de *certiorari*, lo expedimos, en reconsideración.

II

La controversia traída ante nosotros requiere que pasemos juicio sobre elementos esenciales del derecho de alimentos en Puerto Rico. Como sabemos, los casos relacionados con alimentos están revestidos del más alto interés público, siendo su interés principal el bienestar del menor. Véanse, Toro Sotomayor v. Colón Cruz, 176 D.P.R. 528 (2009); Argüello v. Argüello, 155 D.P.R. 62, 70 (2001). Esto es así, puesto que forma parte de la política pública del gobierno de Puerto Rico que los padres o las personas legalmente responsables contribuyan a la manutención y al bienestar de sus hijos menores dependientes. Véase Art. 3 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 502, *et seq.*, (Ley Núm. 5). Cabe mencionar que esa política es de raigambre constitucional y se desprende del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico.[2] Véanse, Toro Sotomayor v. Colón Cruz, supra; Argüello v. Argüello, supra; Chévere v.

---

[2] Art. 2, Sec. 10., Const. E.L.A., L.P.R.A. Tomo 1.

Levis, 150 D.P.R. 525 (2000); Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 621 (1986). Pasemos, pues, a revisar las disposiciones de nuestra legislación civil que atienden esta materia.

En primer lugar, el Art. 142 del Código Civil de Puerto Rico define alimentos como todo lo indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. 31 L.P.R.A. sec. 561. Ese término también comprende la educación e instrucción del alimentista, cuando este es menor de edad. Id. Por vía jurisprudencial extrapolamos esta norma resolviendo que el proseguir los estudios universitarios o vocacionales que se comenzaron durante la minoridad también forma parte de las necesidades alimentarias de un hijo, aun cuando este ya alcanzó la mayoridad. Véase, Key Nieves v. Oyola Nieves, 116 D.P.R. 261 (1985).

Es de conocimiento que nuestro Código Civil proporciona dos artículos que señalan quiénes son las personas llamadas a alimentar a los hijos. Uno de estos es el Art. 153 que discute las facultades y deberes de los padres con respecto a sus hijos por razón de la patria potestad. 31 L.P.R.A. sec. 601. Acorde a esta disposición, las madres y los padres tienen el deber de alimentar a sus hijos no emancipados, tenerlos en su compañía y educarlos con arreglo a su fortuna. Id. Por otro lado, el Art. 143 regula lo relacionado a los alimentos entre parientes. Allí se dispone que están

obligados a darse alimentos recíprocamente, entre otros, los ascendientes y descendientes.  31 L.P.R.A. sec. 562. Ahora bien, es importante recalcar que el deber de alimentar a los hijos cuando estos son menores de edad no está subordinado a uno u otro artículo del Código Civil sino a la relación paterno filial legalmente establecida. Chévere v. Levis, supra, pág. 539.  Así lo explicamos en el caso precitado al señalar que

> [i]ndependientemente de lo expresado a través de nuestra jurisprudencia en torno a las fuentes de las cuales emana la obligación de alimentar, *la obligación de alimentar a los hijos menores es resultado de la relación paterno-filial y surge desde el momento en que la paternidad o maternidad quedan establecidos legalmente*. Esto quiere decir que el padre y la madre *legalmente establecidos* como tales, tengan o no la patria potestad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento. *El derecho de los menores a reclamar alimento, la obligación de los padres de proveerlos y la interpretación de los tribunales para concederlos deben estar enmarcados en la relación paterno-filial legalmente establecida; no supeditada a uno u otro artículo del Código Civil*. Claro está, la cuantía de pensión alimentaria se fijará tomando en consideración, no sólo la necesidad de los hijos menores sino también la condición socio económica del padre alimentante.
>
> Así, pues, el deber de alimentar, educar y criar a los hijos menores es como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento.  (Énfasis en el original)(Citas internas omitidas) Id.

Expuesto lo anterior, procede que discutamos las normas que guían la forma en que los obligados a alimentar deben cumplir su cometido.  Según nos ilustra el Art. 146

de nuestro Código Civil, la pensión alimentaria que se otorgue será **proporcional** a los recursos del que los da y a las necesidades del que los recibe. 31 L.P.R.A. sec. 565. Véase también, Llorens Becerra v. Mora Monteserín, 178 D.P.R. 1003, 1016 (2010). En ese mismo caso reiteramos que la determinación de la cuantía de alimentos corresponde al prudente arbitrio del juzgador, quien debe velar por que la cuantía que se establezca cumpla con el principio de proporcionalidad. Id. Véase también, Guadalupe Viera v. Morell, 115 D.P.R. 4, 14 (1983). Por lo tanto, es claro que la obligación alimentaria recae en ambos progenitores, quedando así obligados a contribuir de acuerdo a su fortuna a la manutención de sus hijos. En otras palabras, "la obligación es indivisible y aplica tanto al padre como a la madre". López v. Rodríguez, 121 D.P.R. 23, 29 (1988). Por tanto, una vez disuelto el vínculo matrimonial, se distribuye entre los padres el pago de una pensión en cantidad proporcional a su respectivo caudal. Toro Sotomayor v. Colón Cruz, supra, pág. 535. En ese último caso, también hicimos la salvedad que años atrás ya habíamos hecho en Mundo v. Cervoni,[3] en cuanto a que la labor que un progenitor realiza en el hogar cuando administra la pensión que el alimentante aporta se considera como un descargo de su propia obligación de alimentar. Toro Sotomayor v. Colón Cruz, supra, pág. 535.

---

[3] 115 D.P.R. 422 (1984)

Como parte del esquema dirigido a uniformar ese principio de proporcionalidad, se aprobó en Puerto Rico la Ley Núm. 5, supra. Esta es la legislación especial que viabiliza la política pública del Estado procurando que las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes. El legislador manifestó que en muchas ocasiones "el alimentante incumplidor tiene la capacidad económica para satisfacer su obligación". 8 L.P.R.A. sec. 502. Según explicaremos más adelante, en Chevere v. Levis, supra, pág. 543, mencionamos que por esa razón ciertos preceptos de la Ley Num. 5 se dirigen más bien a aquellas personas que tienen la obligación de alimentar, pero que a pesar de ello se niegan a cumplir con su responsabilidad.

Con el propósito de fortalecer los sistemas judiciales para la agilización de los procedimientos de reclamación de alimentos, esa pieza legislativa ordenó que se prepararan y adoptaran unas guías que ayudaran a determinar y modificar las pensiones alimentarias de manera uniforme en conformidad con las facilidades económicas de cada progenitor y las necesidades y aptitudes educacionales del alimentista. 8 L.P.R.A. sec. 518. Ese mandato surge como consecuencia del "Family Support Act" de 1988[4] promulgada por el Congreso de Estados Unidos requiriéndole a todos los estados implantar guías

---

[4] Pub. L. No. 100-485, 102 Stat. 2343, 42 U.S.C. sec. 667 (a).

mínimas específicas para determinar la pensión alimentaria. S.E. Torres Peralta, El derecho alimentario en Puerto Rico, Ed. rev. 2007, Publicaciones STP Inc., T.1, pág. 4.03. El requerimiento de esa reglamentación tuvo el propósito de hacer más consistentes las pensiones que se otorgaban, creando así, un sistema justo. L. Raatjes, High-Income Child Support Guidelines: Harmonizing the need for Limits with the best interest of the child. 86 Chi-Kent L. Rev., 324 (2011). A pesar de que los estados utilizaron modelos económicos diferentes para confeccionar sus guías, estas tendieron a ofrecer pensiones más uniformes que las que se adjudicaron previo a la existencia de estas. Id. De esa forma, se pusieron en vigor en Puerto Rico las "Guías para determinar y modificar las pensiones alimentarias en Puerto Rico"[5] (las Guías) uniformando y facilitando el cálculo de las pensiones para menores a base de criterios y números descriptivos. 8 L.P.R.A. sec. 518. Dentro del proceso evaluativo de las Guías, se toma en consideración el ingreso de ambos padres puesto que cada uno tiene la obligación legal de aportar para la manutención de sus hijos. Llorens Becerra v. Mora Monteserín, supra, pág. 1018. Exploremos brevemente los mecanismos dispuestos en esta reglamentación.

---

[5] Guías para determinar y modificar las pensiones alimentarias en Puerto Rico, Reglamento Núm. 7135, Departamento de Familia Administración para el Sustento de Menores, 24 de abril de 2006.

Las Guías proveen para el cálculo de dos tipos de pensiones alimentarias: la básica y la suplementaria. En el Artículo 4 (27) de las Guías la primera se define como la participación del ingreso neto de la persona no custodia que se dedica al pago de los gastos mínimos en que se incurre para la crianza del alimentista. Estos gastos incluyen aquellos por concepto de alimentación, utilidades, transportación, entretenimiento y vestimenta, excepto gastos de uniforme. Para arribar a ese cálculo, el Art. 7 de ese reglamento alude a la "tasa", que es la "[p]roporción por la cual se multiplica el ingreso neto de la persona no custodia para obtener la pensión alimentaria básica que esta deberá pagar". Por su parte, los gastos suplementarios son aquellos que "tanto la persona no custodia como la persona custodia deben sufragar para satisfacer las necesidades del/la alimentista que no se contemplan en la pensión alimentaria básica". Art. 4 (14) de las Guías. Entre estos figuran los gastos de educación y vivienda. Así entonces, por definición, la pensión alimentaria suplementaria es la "[p]roporción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios". Artículo 4 (30) de las Guías.

Todo lo mencionado anteriormente cumple la función de establecer de manera proporcional la aportación monetaria que cada padre debe asumir para suplir las necesidades de sus hijos menores de edad. Para ello, es indispensable un

descubrimiento de prueba amplio y compulsorio tendente a descubrir la situación económica tanto de la parte alimentante como del alimentista. Art. 16 de la Ley Núm. 5, 8 L.P.R.A. sec. 515. Ahora bien, a partir de Chévere v. Levis, supra, pautamos una norma que cambió el cómputo de las pensiones alimentarias en algunos casos particulares. Veamos.

En Chévere v. Levis, supra, el alimentante solicitó una orden protectora luego de que se le cursara un requerimiento de información para que descubriera su capacidad económica y estilo de vida a fin de fijar la pensión alimentaria que debía pagar. Hizo lo anterior, toda vez que entendía que ello era improcedente, ya que había admitido poseer la capacidad económica suficiente para satisfacer el pago de la pensión que en su día se impusiera. Pronunciamos en ese caso que es precisamente la negativa a cumplir con la obligación a alimentar lo que activa el descubrimiento de prueba relacionado a los ingresos para determinar la suficiencia de pago del alimentante. Id, pág. 543. Consecuentemente, dijimos que

> …cuando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, *promueve con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias.* Por consiguiente, cuando el padre alimentante acepta capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley. (Énfasis en el original.) Id., pág. 544.

Al ser así, resolvimos que quedaría pendiente únicamente determinar las necesidades económicas del alimentista, **para fijar la pensión alimentaria que le correspondería pagar a quien aceptó la capacidad económica.**

> [A]ceptada la capacidad económica del padre, sólo resta que el tribunal determine **la suma justa y razonable en concepto de pensión alimentaria para los menores con relación a sus necesidades y la situación económica de la madre.** Esto, sin embargo, **no exime** al señor Levis de descubrir cualquier prueba que sea necesaria para que el tribunal pueda cumplir con su deber de fijar la pensión alimentaria que proceda de acuerdo con las necesidades particulares de los menores en este caso y conforme a la particular condición socioeconómica del padre. (Énfasis nuestro) Id.

Conforme a esa norma, dictaminamos que en estos casos el alimentante no podrá impugnar la pensión que se estableció conforme a las necesidades de los alimentistas alegando que no tiene capacidad económica para pagarla. Téngase presente que esa prohibición no se refiere a impugnar la cuantía de la pensión por esta resultar contraria a la prueba o ser una irrazonable a la luz de las necesidades de los menores.

Poco tiempo después resolvimos <u>Chévere Mouriño v. Levis Goldstein</u>, 152 D.P.R. 492 (2000), secuela del caso anterior. Allí nos enfrentamos a la controversia de dictar cuáles eran las necesidades de los menores cuando el padre alimentante había aceptado capacidad económica para pagar la pensión que correspondiera. Así, pronunciamos que en esos casos la pensión alimentaria se fijará acorde a los

preceptos del Código Civil contenidos en los Arts. 153, 146 y 142 y tomando en consideración la condición económica y el estilo de vida del alimentante en unión a las necesidades de los alimentistas, incluyendo en estas el estilo de vida al cual fueron acostumbrados. Id., pág. 505. Indicamos que para adjudicar esto, un tribunal no necesita sopesar evidencia directa sobre los gastos e ingresos, sino que puede valerse de evidencia circunstancial atinente al estilo de vida al que tiene derecho el menor conforme al estilo de vida que mantiene el alimentante. Id.

Algunos años después, esta normativa referente al estilo de vida del alimentante trajo la polémica que se suscitó en Ferrer v. González, 162 D.P.R. 172 (2004). Allí resolvimos que no procedía descubrir prueba sobre la condición económica de un alimentante que aceptó capacidad económica para determinar cuál era su estilo de vida y así poder determinar los gastos razonables de los menores. Además, mencionamos que en estos casos "sólo restaría determinar las necesidades del menor y la capacidad económica de la madre para fijar la cuantía a la que se está obligado a pagar en concepto de alimentos". Id., pág. 181.

### III

Expuesto el marco doctrinal que precede, pasemos a examinar el primer error señalado en el recurso de epígrafe.

En este caso, el señor Maisonet aceptó tener capacidad económica para pagar la pensión de sus hijos. Sin embargo, luego que se adjudicó la cantidad que le correspondía pagar, alegó que la madre debía asumir el pago de una parte de la misma. En otras palabras, nos solicita que justipreciemos cuál es la proporción con la cual debe contribuir la persona custodia en la pensión que se determinó a base de las necesidades razonables de los menores. El peticionario parte del supuesto de que es contrario a derecho imponerle a un solo padre el pago de la totalidad de esos gastos. Es claro que la obligación alimentaria recae sobre ambos progenitores. Eso se desprende tanto del Código Civil así como de la Ley Núm. 5, supra, y de nuestras decisiones jurisprudenciales. Sobre ello no hay controversia. Ahora bien, ¿de qué manera podemos conciliar la solicitud del señor Maisonet con la norma que nació a partir de Chévere v. Levis, supra, que permite que en nuestra jurisdicción un alimentante que acepta poseer capacidad económica no divulgue información sobre sus ingresos? Atendamos este particular.

Para sopesar la solicitud del señor Maisonet debemos explorar algo básico, la definición de la voz proporción. Acorde al Diccionario de la Real Academia Española[6] esa palabra significa "[d]isposición, conformidad o correspondencia debida de las partes de una cosa con el

---

[6] http://lema.rae.es/drae/?val=proporción. Visitado por última vez en 17 de agosto de 2012.

todo o entre cosas relacionadas entre sí". En su vertiente aritmética, representa la "igualdad de dos razones".

Como hemos visto, la idea de proporcionalidad permea toda nuestra legislación alimentaria. Así por ejemplo, el Art. 146 del Código Civil, supra, señala que la cuantía de alimentos será proporcional a los recursos del que los da y a las necesidades del que los recibe. Por otro lado, en la declaración de la política pública de la Ley Núm. 5, supra, se expresa que el Estado debe procurar que las personas legalmente responsables **contribuyan** a la manutención de los hijos en la medida en que sus haberes económicos lo permitan. Así también, las definiciones que ofrecen las Guías para la pensión alimentaria básica y suplementaria aluden a la **proporción** o **participación** con la que debe aportar cada alimentante para alimentar a su hijo.

En cuanto a establecer la proporción de los gastos alimentarios que debe aportar cada padre, los casos de alimentos que se tramitan utilizando las Guías no presentan gran complicación. Esto es así puesto que las mismas se crearon a base de criterios numéricos que permiten llegar a cálculos uniformes de acuerdo a los ingresos de la persona custodia así como de la no custodia. Nos sugiere el señor Maisonet que utilicemos esa reglamentación para imponerle a la señora Santiago la proporción monetaria que debe aportar para satisfacer las

necesidades razonables de los menores que determinó la EPA. Al analizar el esquema de las Guías, es ineludible concluir que esa sugerencia es improcedente. Nos explicamos.

Por su propia definición, la pensión alimentaria básica implica la participación del ingreso neto de la persona **no custodia** que se destina para satisfacer las necesidades básicas del alimentista menor de edad. Esa participación se obtiene multiplicando el ingreso neto de la persona no custodia por un valor numérico denominado "tasa", el cual fue creado específicamente para calcular la aportación económica que debe sufragar el progenitor que no vive con sus hijos. Por lo tanto, se deduce que ese cálculo no existe para obtener la aportación económica que debe sufragar un padre custodio, cuando como en este caso, el alimentante ha aceptado capacidad económica y no ha divulgado sus ingresos. De otra parte, las Guías también contemplan el cómputo de una pensión alimentaria suplementaria. La fórmula matemática para ese componente utiliza como factores de su ecuación los ingresos netos de ambos progenitores; del custodio y del no custodio. Si bien los gastos suplementarios no se contemplan en la pensión alimentaria básica, nuevamente, se hace imposible realizar esa operación aritmética para atribuir porciento alguno de la pensión a la persona custodia. Esto es así por cuanto desconocemos en este caso cuál es el ingreso de la persona no custodia.

Como vemos, la razón por la cual es improcedente utilizar las Guías para acceder a la petición del señor Maisonet es porque las estaríamos utilizando para un propósito para el que no fueron creadas, y además, por que requeriría conocer los ingresos de ambos progenitores. Ante ello, tanto por su fin, así como por su mecanismo, las Guías son inaplicables al caso que atendemos. No procede utilizar los mencionados procedimientos para obtener la proporción con la cual debe aportar la persona custodia en los gastos razonables de los menores cuando el alimentante ha aceptado capacidad económica y no descubre sus ingresos.

A pesar de lo anterior, tanto Chévere v. Levis, supra, como Ferrer v. González, supra, puntualizaron que una vez la persona no custodia acepta capacidad económica solo resta determinar las necesidades razonables de los menores y la capacidad económica de la persona custodio. Pero surge la interrogante, ¿cómo llegamos al porcentaje que le corresponde aportar a cada uno de ellos si desconocemos el valor de una de las partes de la ecuación? La variable desconocida en ese cómputo es el ingreso del señor Maisonet. Siendo ello así, este nos invita a que adoptemos una fórmula para llegar a ese resultado. No obstante, esa petición queda fuera de nuestros límites adjudicativos. En ausencia de pronunciamiento legislativo alguno, estamos impedidos de diseñar algún esquema o reglamentación a esos efectos.

Debemos, pues, determinar cómo se adjudica el porcentaje de gastos que le corresponde aportar a la señora Santiago tomando en consideración las limitaciones que hemos discutido anteriormente. Al hacer esto, reconocemos el valor de la norma de aceptación de capacidad económica y los propósitos y objetivos que la misma cumple. Como ya mencionamos, esta contribuye significativamente a adelantar el proceso de descubrimiento de prueba evitando trabas procesales que puedan retrasar la adjudicación final de la pensión. También, debemos tomar en cuenta una solución que sea justa para ambas partes y que no vaya en detrimento de los axiomas que rigen el derecho de alimentos en Puerto Rico. Examinado nuestro estado de derecho, resolvamos esta controversia.

En el caso ante nuestra consideración, el peticionario aceptó tener capacidad económica para pagar los gastos razonables de sus hijos. Al ser esto así, la jurisprudencia establece un esquema para fijar la pensión distinto a aquel que se sigue mediante las Guías. No se utiliza la proporción de los ingresos para ese cálculo, sino que la persona custodia viene obligada a establecer cuáles son los gastos razonables de los menores para así determinar cuánto debe aportar la persona no custodia en cuanto a esos gastos.

Debemos tomar en consideración que en estos casos la persona custodia no escoge participar en este tipo de

cálculo de pensión.  Recordemos que quien aceptó capacidad económica fue el aquí peticionario.  Contrario al señor Maisonet, en la vista evidenciara la señora Santiago descubrió sus ingresos.  Conforme al derecho aplicable, se estableció la pensión según las necesidades razonables de los menores y el estilo de vida del alimentante que los menores tienen derecho a disfrutar.  Para determinar ese estilo de vida no se permite descubrimiento de prueba sobre los ingresos y gastos del alimentante. La persona custodia puede presentar prueba circunstancial o directa que se dirija a ello, pero sin indagar en evidencia que tienda a descubrir su estado económico.  En ese sentido, la pensión se establece conforme al prudente arbitrio del juzgador en cuanto a la prueba de las necesidades de los alimentistas.

Así pues, surge un problema en este caso para calcular la participación que le corresponde aportar a cada uno de los padres en cuanto a los gastos razonables de los menores y poder establecer la pensión que en derecho procede, es decir, una que sea proporcional a la fortuna de todos los obligados a alimentar.  Para poder hacer ese cálculo tenemos ante nosotros dos variables desconocidas: (1) el porciento de participación de la persona no custodia y (2) los ingresos de esta para poder adjudicar esa proporción.  Por tanto, resulta imposible adjudicar una participación porcentual justa al desconocerse los ingresos de una de las partes.  En otras

palabras, no es posible establecer el cómputo entre el total de los gastos razonables y los ingresos si la fortuna de una de las partes es desconocida. Por tanto, **imputarle a la señora Santiago una parte de los gastos razonables de los menores desconociendo los ingresos del señor Maisonet implicaría tener que establecer una proporción arbitraria.** Es decir, resultaría injusto y arbitrario adjudicarle a la persona custodia el pago de una proporción de la pensión alimentaria que se fijó a favor de los menores ante las particularidades propias de los casos en que el alimentante acepta capacidad económica, pues llegaríamos a una determinación que no estaría basada en criterios numéricos. Esto significaría un retroceso a la situación que las Guías intentaron remediar y a su propósito de fijar pensiones alimentarias uniformes y justas para las partes.

En atención a lo anterior, resolvemos que, en casos en que el alimentante acepta capacidad económica, procede entonces que el alimentante pague el 100% de los gastos razonables de los menores. De querer este que se le imponga pagar solo una proporción de los mismos bajo el fundamento de que la persona custodia también debe realizar una aportación, por imperativos de justicia y de principios matemáticos básicos, deberá divulgar sus

ingresos a fin de utilizar las Guías y poder adjudicar la participación correspondiente a la madre y al padre.[7]

Por todo lo enunciado, concluimos que no erró el foro apelativo al confirmar la suma que se le ordenó pagar al señor Maisonet.  No obstante, sí erró al dictaminar que a este no se le ordenó el pago de la totalidad de los gastos de los menores por cuanto, a su entender, existían otros gastos sobre los que la EPA no hizo adjudicación alguna. Las necesidades razonables de los menores son aquellas que la parte alimentista logró probar durante la vista evidenciaria.  Considerar la existencia de posibles gastos que no se reclamaron ni se probaron ante la EPA constituye un error de derecho y un abuso de discreción.

IV

Pasemos ahora a dirimir el segundo error planteado por el peticionario.  En este nos solicita que resolvamos si el TPI carecía de jurisdicción para avalar la pensión alimentaria que recomendó la EPA en cuanto a la hija que al momento de la vista evidenciaria advino a la mayoría de edad.  Arguye el padre alimentante que ese hecho privaba a la EPA de recomendar una pensión alimentaria que tuviera vigor mas allá de la fecha en que ella cumplió 21 años. Apunta que nuestro ordenamiento jurídico no contempla que

---

[7] En todo caso, no debemos olvidar que si por alguna razón las Guías resultan en la aplicación de una pensión irrazonable, la propia ley Núm. 5 preceptúa que en caso de que el adjudicador determine que aplicar las Guías puede resultar en una pensión injusta o inadecuada, se determinará la pensión considerando entonces ciertos factores, entre estos, los recursos económicos de los padres, las aportaciones no monetarias de cada padre al cuidado del menor y las necesidades y aptitudes educacionales o vocacionales.  8 L.P.R.A. sec. 518 (b).

una pensión continúe en vigor automáticamente después de que el alimentista ya no es un menor de edad.[8]

Sabemos que mientras los hijos son menores de edad y no se han emancipado, ya sea por razón de matrimonio o por dictamen judicial, el progenitor custodio con patria potestad está capacitado para reclamar alimentos para beneficio de estos. Toro Sotomayor v. Colón Cruz, supra, pág. 535. En esos casos, aunque es el padre o madre custodio quien presenta la acción, la misma pertenece al hijo, es decir, el padre o madre demandante que la inició solo actúa como un representante. Id, pág. 536. Ahora bien, una vez cesa esa incapacidad por minoridad, los padres ya no pueden acudir a los tribunales a representar los intereses de sus hijos. En tal caso, el hijo ya mayor de edad se encuentra revestido de la capacidad jurídica necesaria para así hacerlo.[9] Id.

Como sabemos, el hecho de que los hijos puedan comparecer a solicitar alimentos aun luego de alcanzar la mayoridad obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido 21 años. Sotomayor v. Colón Cruz, supra; Key Nieves v. Oyola Nieves, 116 D.P.R. 261 (1985). En otras palabras, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los padres,

---

[8] Véase, Alegato del Apelante, pág. 16.

[9] Véase también, Ríos Rosario v. Vidal Ramos, 134 D.P.R. 3, 10 (1993), donde se especifica que en Puerto Rico no existe la posibilidad de la patria potestad extendida tras la mayoridad.

pues siempre subsistirá la obligación que emana del Art. 143 del Código Civil, supra, que atiende las necesidades alimentarias entre parientes. No obstante, ese tipo de obligación requiere que el hijo ya mayor de edad tenga la necesidad de esa pensión alimentaria, lo que se analiza bajo criterios distintos a los que se toman en cuenta cuando se adjudican los alimentos de un menor. Véase Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785, (2000); Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518 (1976). Por tanto, este viene obligado a probar las circunstancias que le hacen acreedor de los mismos.

En cuanto a los hechos específicos de este caso, ya desde Guadalupe Viera v. Morel, supra, pág. 14, atendiendo al comentario de varios tratadistas,[10] mencionamos que la enumeración que provee el Código Civil en cuanto a la definición de "alimentos" no debía entenderse tan irrestricta de modo que no le permitiera al hijo que había iniciado un oficio o carrera durante su minoridad, el derecho a exigirle alimentos a sus padres para poder completarlos, aún despúes haber llegado a la mayoridad. Partiendo de lo anterior, en Key Nieves v. Oyola Nieves, supra, pág. 266, reiteramos que el deber legal de todo padre o madre de proporcionarle alimentos a sus hijos para propósitos de educación, conforme al Art. 143, supra, no podía cesar meramente por el hecho de que ese alimentista

---

[10] J.M. Manresa, Comentarios al Código Civil Español, Madrid, Ed. reus, 1956, T 1, pág. 791; F. Puig Peña, Compendio de Derecho Civil Español, Madrid, Eds. Pirámide, 1976, T.V, pág. 501.

hubiese alcanzado la mayoría de edad.  Id. Véase también, Argüello v. Argüello, supra. Pronunciamos que bajo circunstancias "normales", es decir, sujeto a los resultados, diligencia, y continuidad observada en los estudios, un hijo que comenzó durante su minoridad estudios de bachillerato tiene derecho a exigir alimentos de sus padres con el propósito de obtener ese grado académico.  En cuanto a la adjudicación de alimentos para completar estudios de post grado, resolvimos que estos se adjudicarían de acuerdo a las circunstancias de cada caso.[11]  Key Nieves v. Oyola Nieves, supra, pág. 267.  Por economía procesal, dijimos en ese mismo caso que este tipo de alimentos podía reclamarse dentro del pleito original de divorcio entre los padres.[12]  Id, pág. 268.

A la luz de esta normativa, recapitulemos los hechos pertinentes a la controversia que atendemos.  La madre custodia en representación de sus hijos menores de edad solicitó que se modificara la pensión alimentaria que estos recibían.  Para ese momento, por ser menores, ella tenía plena autoridad -además del deber- de representarlos en esa acción.  Ahora bien, en el ínterin del caso, al

---

[11] Estos alimentos se otorgarán conforme al Art. 146 del Código Civil y el hijo vendrá obligado a demostrar, entre otras cosas, que es acreedor a esa asistencia económica, que el objetivo deseado es razonable, y que tiene buena aptitud en los estudios.  Además, tendrán prioridad en cuanto a alimentos aquellos hijos que aún son menores de edad.  Véase, Key Nieves v. Oyola Nieves, 116 D.P.R. 261, 267 (1985)

[12] Véase también, Ríos Rosario v. Vidal Ramos, 134 D.P.R. 3, 12 (1993), donde se resuelve que la acción promovida por una madre o padre en representación de sus hijos ya mayores de edad, para reclamar pago de pensiones alimentarias, debe sujetarse a la oportuna intervención o sustitución del alimentista, quien es la parte realmente interesada.

momento de celebrarse la vista evidenciaria, la hija de las partes cumplió 21 años. No consta en el expediente que esta joven hubiese comparecido por sí misma, luego de esa fecha, a solicitar alimentos. En ese contexto, debemos contestar la siguiente interrogante: ¿el hecho de que la hija alcanzó la mayoría de edad implica que quedó automáticamente desprovista de pensión alimentaria? Respondemos en la negativa.

Lo expuesto no conlleva el cese automático de la pensión alimentaria que respondía a las necesidades de esa hija durante su minoridad. La pensión así fijada no cesa automáticamente porque la menor haya alcanzado la mayoría de edad. Recordamos que una vez se establece la pensión alimentaria que se solicitó durante la minoría de edad de un alimentista, el tribunal está vedado de reducir la pensión así establecida sin que se haya presentado una petición a tales efectos. Véanse, Valencia, Ex parte, 116 D.P.R. 909, 916 (1986); 8 L.P.R.A. sec. 518. Además, atendamos a los hechos que presenta este caso. Aquí la hija de las partes, mientras era menor de edad comenzó estudios universitarios y cumplió 21 años sin culminarlos. Esto ocurrió mientras se dilucidaba la solicitud de revisión de pensión alimentaria, la cual presentó la madre custodia precisamente por razón de que tales estudios variaron las necesidades de sus hijos. El hecho de que esa hija llegara a la mayoría de edad no detuvo las necesidades que apareja ser una joven estudiante que aún

no ostenta un grado académico para entrar al mercado laboral.

Por tanto, sin perder de perspectiva que la pensión alimentaria que se otorga a favor de un menor de edad responde a este hecho, y además, que la pensión que se adjudica conforme al Art. 143 del Código Civil, _supra_, se rige por criterios diferentes, sostenemos que la pensión alimentaria no cesa automáticamente al momento de cumplir la mayoridad de edad. De lo contrario, se crearía una situación sumamente tortuosa para los jóvenes involucrados en esa acción. No podemos avalar que arbitrariamente un alimentante suspenda su obligación de pagar una pensión alimentaria por el hecho de que el alimentista advenga a la mayoría de edad.

Debido a lo anterior, resolvemos que es deber del alimentante, si es que así lo desea, poner en conocimiento al tribunal de que sus hijos alimentistas están próximos a llegar a la mayoridad y su interés de ser relevado del pago de la pensión alimentaria. Es decir, la pensión otorgada a un menor de edad continuará en vigor –aunque advenga a la mayoría de edad– hasta que no se realice el trámite procesal descrito anteriormente. Esa moción se le deberá notificar al alimentista, de modo que este pueda comparecer dentro de ese mismo pleito -a nombre propio- y establecer que sus necesidades permanecen vigentes y que reúne los requisitos que le hacen acreedor de la pensión a pesar de que ya es mayor de edad. Entonces, solo restará

que el tribunal, tomando en consideración las circunstancias particulares de cada caso, evalúe si procede relevar al padre alimentante de la obligación que se le había impuesto hasta ese momento. Es decir, una vez se ha puesto en conocimiento al tribunal de que un alimentista está próximo a llegar a la mayoridad, y este último a su vez ha informado que por su condición de estudiante aún necesita alimentos, el foro primario deberá calendarizar una vista evidenciaria para pasar juicio sobre los requerimientos de las partes. Por estas razones, será imperativo que el tribunal atienda con premura estos planteamientos para evitar un daño irreparable a cualquiera de las partes.

Por las razones previamente expuestas, resolvemos que el foro primario no cometió el error que señala el peticionario.

V

Por los fundamentos antes esbozados se confirma, aunque por distintos fundamentos, la sentencia recurrida. Resolvemos que, en los casos en que un alimentante acepte capacidad económica, este debe descubrir sus ingresos si interesa que se le imponga a la persona custodia el pago de una proporción de los gastos de los menores. Esto no deroga la norma establecida a partir de Chévere v. Levis, supra. Más bien, la aclaramos a los fines de pautar que en tal situación, el alimentante que aceptó capacidad económica para no descubrir información financiera estará

obligado a pagar el 100% de los gastos razonables de los menores ya que el desconocimiento de sus ingresos impide que a base de criterios numéricos se le ordene a la persona custodia asumir el pago de un porcentaje de tales gastos. Por otro lado, se devuelve el caso al TPI para la continuación de los procedimientos acorde a lo aquí resuelto.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marisol Santiago Texidor
Carlos Maisonet Correa
    Peticionarios

       v.

Carlos Maisonet Correa
    Recurridos

Certiorari

AC-2010-0105

SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2012.

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Apelaciones, aunque por distintos fundamentos. Resolvemos que, en los casos en que un alimentante acepte capacidad económica, este debe descubrir sus ingresos si interesa que se le imponga a la persona custodia el pago de una proporción de los gastos de los menores. Aclaramos la norma establecida en Chévere v. Levis, 150 D.P.R. 525 (2000) a los fines de pautar que, en tal situación, el alimentante que aceptó capacidad económica para no descubrir información financiera estará obligado a pagar el 100% de los gastos razonables de los hijos ya que el desconocimiento de sus ingresos impide que, a base de criterios numéricos, se le ordene a la persona custodia asumir el pago de un porcentaje de tales gastos. Por otro lado, se devuelve el caso al TPI para la continuación de los procedimientos acorde a lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con la siguiente expresión, a la cual se une el Juez Presidente señor Hernandez Denton: "La Juez

Asociada señora Rodríguez Rodríguez disiente del proceder mayoritario porque bajo la mácula de no imponer a la persona custodia un porciento arbitrario, se termina imponiendo arbitrariamente el cien por ciento (100%) de responsabilidad al alimentante.  Con la conclusión a la que llega el Tribunal se revocan *sub silentio* nuestros pronunciamientos en *Chévere v. Levis,* 150 D.P.R. 525 (2000), y la política pública de fomentar que los alimentantes asuman capacidad económica para agilizar los procedimientos en cuanto a la otorgación de pensiones alimentarias. *Id.* Pág. 544."  La Jueza Asociada señora Pabón Charneco no interviene.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo