Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| EDGAR ABNER REYES COLÓN<br><br>Recurrido<br><br>v.<br><br>SHEILA LI BENABE GONZÁLEZ<br><br>Peticionaria | KLCE202400303 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.: SJ2021RF00002 (708)<br><br>Sobre: Alimentos |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Casillas y el Juez Candelaria Rosa.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de abril de 2024.

Luego de una estipulación sobre el monto de una pensión alimentaria final, el Tribunal de Primera Instancia ("TPI"): (i) declinó imponer intereses por mora al padre en conexión con la condena de honorarios impuesta a favor de la madre, (ii) determinó que la estipulación no obligaba al padre a sufragar el costo de una cuidadora de la hija de las partes para el mes de junio de 2023, y (iii) determinó que la madre se había obligado, bajo la transacción, a devolver un reloj marca Rolex al padre. Según se explica a continuación, en el ejercicio de nuestra discreción, declinamos la invitación a intervenir con lo actuado por el TPI en cuanto a los intereses reclamados; por otra parte, concluimos, contrario al TPI, que el padre sí se obligó a sufragar el costo de la cuidadora hasta el

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre *Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones*. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202200358, KLCE202300137, KLCE202300243, KLAN202300608 y KLCE202300890); véase, además, Orden Administrativa OATA-2023-032 de 27 de febrero de 2023.

30 de junio de 2023 y que, como las partes no llegaron a un acuerdo en cuanto al reloj en controversia, no procedía ordenar su entrega.

I.

La acción de referencia se presentó en enero de 2021 por el Sr. Edgar Abner Reyes Colón (el "Padre") contra la Sra. Sheila Li Benabe González (la "Madre").[2] Las partes tienen en común una hija menor de edad (la "Hija") para la cual se fijó una pensión alimentaria provisional de $3,000.00 mensuales.[3]

Como resultado de una vista celebrada el **19 de mayo de 2023** (la "Vista"), las partes llegaron a un acuerdo sobre la pensión alimentaria final para beneficio de la Hija. Mediante una Resolución notificada el 23 de mayo (la "Sentencia"), el TPI acogió la referida transacción.

Se dispuso que el Padre pagaría "la suma de $5,000.00 mensuales, el 100% de los gastos académicos, campamento de verano [y] gastos médicos". Además, se acordó que las partes dividirían por la mitad los "gastos extraordinarios" de la Hija. Se acordó que el acuerdo sería "efectivo el 1 de junio de 2023" y que "la actual cuidadora cesará sus funciones el 30 de junio de 2023". Se estipuló "el recogido de unos bienes muebles pertenecientes" al Padre, pero no se incluyó en la Sentencia cuáles eran.

Mediante el recurso que nos ocupa, presentado el 11 de marzo (lunes), la Madre nos plantea un número de controversias relacionadas a incidentes ocurridos luego de la referida transacción. La Madre formula los siguientes señalamientos de error:

1. Erró, abusó de su discreción y actuó contrario a derecho el TPI en contra del mejor bienestar de la menor al no imponer el desacato inmediato y ordenar el pago de intereses legales por mora al peticionado/demandante, tras el incumplimiento por más de 5 meses con la Sentencia de este Tribunal de

---

[2] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada núm. 1.
[3] Véase SUMAC, Entrada núm. 29.

Apelaciones y el impago de los honorarios de abogado impuestos.

2. Erró, abusó de su discreción y actuó contrario a derecho el TPI en contra del peticionado/demandante por el impago de la cuidadora de la menor hasta la fecha de su terminación de empleo, 30 de junio de 2023.

3. Erró, abusó de su discreción, actuó contrario a derecho, totalmente parcializado y de forma *ultra vires* el TPI al determinar que la peticionaria/demandada desacató una orden de entrega de un Rolex que le fue regalado, ello porque no existe dicha Orden y la propia voz del TPI durante la Vista sobre el particular dispone lo contrario.

4. Erró, abusó de su discreción y actuó contrario a derecho el TPI en contra del mejor bienestar de la menor al denegar los honorarios de abogado de la menor por el claro y patente desacato del peticionado/demandante en el cumplimiento con la Orden de este respetable Tribunal de Apelaciones modificando la cuantía de honorarios de abogado e imponiendo su pago.

Mediante una Resolución de 13 de marzo, le ordenamos al Padre mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la decisión recurrida. El 8 de abril, el Padre compareció y consignó su oposición al recurso.

Aunque el TPI dispuso de las controversias en un solo documento, por tratarse de asuntos distintos, exponemos el trámite procesal pertinente a cada controversia, y evaluamos y disponemos, separadamente, de cada uno de los planteamientos traídos ante nuestra consideración.

II.

El 12 de junio de 2023, la Madre presentó una *Urgente Solicitud de Establecimiento de Honorarios de Abogados al Amparo de lo Dispuesto en el Artículo 22 de la Ley Especial de Sustento de Menores*.[4] En dicho escrito, la Madre hizo un recuento del trabajo realizado por su representante legal desde que solicitó el aumento

---

[4] Véase SUMAC, Entrada núm. 1026.

de pensión alimentaria a favor de la menor y puntualizó que la pensión alimentaria, efectivamente, fue aumentada; por lo que solicitó $55,825.00 en concepto de honorarios de abogados.

Mediante una Orden notificada el 13 de junio, el TPI, sin ofrecer explicación alguna, ordenó al Padre a pagar únicamente $2,000.00 en concepto de honorarios de abogado.[5]

Insatisfecha, el 12 de julio, la Madre presentó un recurso ante este Tribunal, al cual el Padre se opuso. Mediante una Sentencia de 31 de agosto de 2023 (KLAN202300608), concluimos que era "ridículamente baja la cuantía concedida por el TPI en concepto de honorarios de abogado" y le ordenamos al Padre "pagar a la demandada $31,900.00 por concepto de honorarios de abogado." El mandato de esta Sentencia fue notificado el 19 de octubre de 2023.

El 30 de octubre, la Madre arguyó ante el TPI, mediante una moción, que a raíz de la emisión del mandato por este Tribunal, el Padre estaba obligado a "pagar de inmediato la cuantía [impuesta] por concepto de honorarios de abogado".

El 14 de noviembre, la Madre presentó una *Urgente Solicitud de Orden*, en la cual nuevamente solicitó que se le ordenara al Padre el pago inmediato de los $31,900.00 fijados por este Tribunal, más los intereses legales acumulados.

El 12 de enero, el TPI celebró una vista de desacato. Según la correspondiente minuta, en la misma, el Padre arguyó que podía pagar los honorarios en un plazo de 24 meses.

Mediante una Resolución notificada el 8 de febrero (la "Resolución"), el TPI le ordenó al Padre acreditar en un término de 5 días "el pago de la totalidad del balance de los honorarios de abogado impuestos por el Tribunal de Apelaciones". No obstante, el TPI

---

[5] Véase SUMAC, Entrada núm. 1027.

observó que este Tribunal no había dispuesto sobre el término específico en que debería realizarse el referido pago.

Conforme lo ordenado por el TPI, el 12 de febrero, el Padre presentó una *Moción en Cumplimiento de Orden*, en la cual informó que ese día había entregado a uno de los abogados de la Madre la totalidad del balance pendiente de honorarios de abogado determinado por este Tribunal.

Aún inconforme, en el recurso de referencia, la Madre plantea que el TPI erró al no imponerle al Padre "intereses por mora" en el pago de los honorarios. Hizo referencia a que el Artículo 674 del Código civil de Puerto Rico establece que los "alimentos concedidos devengan intereses por mora desde el momento en que se dicta la sentencia". Por tanto, arguye que el TPI debió obligar al Padre a satisfacer intereses a partir de la fecha en que se emitió el mandato al respecto por este Tribunal en octubre de 2023.

Por su parte, el Padre sostiene que no proceden los intereses por mora; arguye, por primera vez, que este Tribunal actuó sin jurisdicción al modificar la cuantía de honorarios inicialmente impuesta por el TPI. El Padre plantea que, luego de emitida la Sentencia, el TPI no tenía jurisdicción para atender, posteriormente y de forma separada, la solicitud de la Madre de honorarios en conexión con el proceso que llevó a la estipulación entre las partes.

En el ejercicio de nuestra discreción, hemos determinado no intervenir con la determinación del TPI de no imponer intereses por mora al Padre con relación a los honorarios de abogado impuestos por este Tribunal. En las particulares y específicas circunstancias de este caso, no podemos concluir que el TPI hubiese cometido un error de derecho o abusado de su discreción al así actuar, ni tampoco que estemos ante algún fracaso de la justicia que justifique nuestra intervención. Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40. Adviértase que, distinto al

recurso de apelación, tenemos la facultad de expedir o denegar un recurso de *certiorari* de manera discrecional. *IG Builders et al. v. BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

III.

En cuanto al gasto de la cuidadora, el 15 de septiembre de 2023, la Madre presentó un escrito mediante el cual le solicitó al TPI que le ordenase al Padre satisfacer el costo de los servicios de cuido de la Menor hasta el 30 de junio de 2023 ($1,733.00), correspondiente al mes de junio de 2023.

El 19 de septiembre, el Padre presentó un escrito en oposición. Sostuvo que lo acordado por las partes, y recogido por el TPI en la Sentencia, no incluía el pago por el Padre del costo de la cuidadora para el mes de junio de 2023. Ello porque lo acordado tuvo efectividad el 1 de junio de 2023 y nada se dispuso en la Sentencia sobre quién asumiría el costo de la cuidadora por dicho mes.

El 14 de noviembre, la Madre reiteró su solicitud de pago en cuanto a la cuidadora. Resaltó que, hasta la transacción entre las partes, el Padre había tenido la obligación de pagar el costo de la cuidadora y que, por medio de la transacción, las partes explícitamente acordaron que esta continuaría trabajando como tal hasta el 30 de junio de 2023.

Mediante la Resolución, el TPI concluyó que el Padre no había acordado sufragar el costo de la cuidadora de la Menor para el mes de junio de 2023. Razonó que la "única obligación" del Padre, "a partir del 1 de junio de 2023[,] era la específicamente establecida" en la "transacción que se formalizó".

Inconforme, la Madre plantea, mediante el recurso que nos ocupa, que, al haberse estipulado por las partes que "la actual

cuidadora cesará sus funciones el 30 de junio de 2023", contra el trasfondo de que era el Padre quien venía pagando por sus servicios por acuerdo entre las partes, ello necesariamente implicó un acuerdo de este de continuar pagando por dichos servicios hasta el 30 de junio de 2023.

El Padre arguye, en cambio, que, a partir del 1 de junio, solo "tendría que pagar a la madre custodia lo que … específicamente se dispuso" en el acuerdo entre las partes, "y nada más".

Concluimos que erró el TPI al negarse a ordenarle al Padre que satisfaga el costo de los servicios brindados por la cuidadora durante el mes de junio de 2023.  Es de crucial importancia recordar que el asunto del costo de la cuidadora fue objeto de intensas controversias entre las partes antes de que estas llegaran finalmente a un acuerdo.  De hecho, al respecto, se presentaron dos recursos ante la consideración de este panel (KLCE202200358 y KLCE202300137).

En efecto, del récord surge que, inicialmente y de forma provisional, las partes acordaron que el Padre sufragaría el costo de la cuidadora.  No obstante, unos meses después, el Padre determinó que dichos servicios ya no eran necesarios y logró que el TPI le relevara del pago de los mismos.  Este Tribunal revocó la determinación del TPI.

A pesar de nuestra decisión, el Padre se negó a reembolsar a la Madre por el costo de la cuidadora; en vez, pretendió pagarle directamente a esta por unos servicios que ya habían sido pagados por la Madre.  Por tanto, fue necesario que el TPI interviniese para ordenar al Padre reembolsar a la Madre el referido costo, luego de lo cual el Padre acudió ante el Tribunal en defensa de su errónea postura.  Al denegar la expedición del auto solicitado por el Padre, le impusimos una sanción económica por haber presentado un recurso frívolo.

Es en el referido contexto que las partes llegaron a un acuerdo final, plasmado en la Sentencia, a los efectos de que "la actual cuidadora cesará sus funciones el 30 de junio de 2023".

Naturalmente, como hasta dicho momento el Padre había estado pagando por dichos servicios, el acuerdo necesariamente implica una estipulación sobre la fecha a partir de la cual ya el Padre no estaría obligado a pagar por los mismos (1 de julio de 2023). Ello, a su vez, significa que el Padre accedió, mediante el acuerdo, a que continuaría pagando por la cuidadora hasta el 30 de junio de 2023. Es decir, el único significado razonable del lenguaje del acuerdo entre las partes, a la luz de la situación que imperaba cuando se alcanzó el mismo, es que el Padre accedió a mantenerse pagando por la cuidadora hasta el 30 de junio de 2023. Si las partes hubiesen pretendido que dicha obligación cesara al 31 de mayo de 2023, no hubiese sido necesario consignar una fecha de cese de servicios.[6]

IV.

Por otra parte, el 16 de noviembre de 2023, el Padre presentó una *Solicitud de Desacato*; sostuvo que la Madre no había cumplido con su obligación de entregar un reloj marca Rolex que tenía en su posesión (el "Reloj"). Según el Padre, desde la Vista, el TPI le había ordenado a la Madre que entregara el Reloj, pero esta no había cumplido con la supuesta directriz.

El 9 de enero, la Madre se opuso a lo solicitado por el Padre. Planteó que, en la Vista, ella nunca accedió a entregar el Reloj, aunque sí se acordó la entrega de otros cuatro relojes del Padre. Alegó que el Reloj fue un "regalo efectuado" a ella, de parte del Padre, durante el matrimonio entre ambos.

---

[6] De hecho, precisamente así fue que interpretamos el lenguaje del acuerdo en ocasión de exponer, al resolver un recurso anterior en este caso (KLCE20230080), la naturaleza y contenido de la transacción entre las partes. Allí expusimos que, de conformidad con el acuerdo, "al 30 de junio de 2023, el Padre dejaría de aportar hacia el pago de cualquier 'cuidadora' de la Hija que la Madre pudiera contratar."

Mediante la Resolución, el TPI concluyó que la Madre tenía la obligación de entregar el Reloj al Padre, ello en virtud de la transacción entre las partes. Por tal razón, declaró con lugar la solicitud de desacato del Padre por el incumplimiento de la Madre con los "acuerdos transaccionales". Ordenó a la Madre acreditar en 5 días que había entregado el Reloj.

Inconforme, la Madre solicita la revisión de esta determinación. Reiteró que el acuerdo entre las partes únicamente incluyó la entrega de cuatro relojes, y que el Reloj había sido un regalo "antes de que [ella] se graduara de la escuela de derecho". En apoyo de su planteamiento sobre una falta de acuerdo sobre el Reloj, la Madre anejó una transcripción de la Vista.

Por su parte, el Padre aduce que el TPI, y este Tribunal, no tienen jurisdicción al respecto porque la Sentencia advino final y firme. Señala que, en la misma, se ordenó a la Madre entregar "unos bienes muebles" del Padre. Indica que, en la minuta de la Vista, se aclaró que "no son 4 sino que son 5 relojes". Además, sostuvo que la transcripción de la Vista apoya su teoría de que el acuerdo incluyó la entrega del Reloj.

Concluimos que erró el TPI al ordenar a la Madre entregar el Reloj. De la transcripción de la Vista, cuya exactitud no fue impugnada por el Padre, surge claramente que no se formalizó un acuerdo entre las partes para la entrega del mismo. En cambio, el acuerdo se circunscribió a la entrega de otros (cuatro) relojes. Véanse págs. 69-70 de la Transcripción (abogados de ambas partes únicamente hacen referencia a cuatro relojes).

Aunque luego, durante la Vista, el Padre insistió en que debían ser cinco relojes, la representación de la Madre respondió que ella únicamente accedía a entregar cuatro de ellos. Ambas partes fueron enfáticas en sus posturas al respecto, por lo que está claro que no hubo acuerdo en cuanto al Reloj. Véanse págs. 72 y

87-89 de la Transcripción. **El TPI se abstuvo de adjudicar u ordenar nada al respecto**, presumiblemente porque únicamente se estaba precisando el alcance de una estipulación entre las partes. Véase pág. 88 de la Transcripción.

Contrario a lo planteado por el Padre, no tiene pertinencia que, en la minuta de la Vista, se hubiese consignado que el TPI había determinado que "[s]e dejó claro que no son 4 sino que son 5 relojes". Ello porque, según expuesto, surge claramente de la transcripción de la Vista que <u>no</u> es correcto lo aseverado en la referida minuta. Como si ello no fuera suficiente, la referida minuta no fue firmada por el TPI, por lo cual tampoco puede considerarse como una determinación que pueda formar la base de alguna teoría sobre "ley del caso". De hecho, al no estar firmada por el TPI, tampoco se podía solicitar su revisión ante este Tribunal.

Tampoco tiene razón el Padre al plantear que ya el TPI había, de algún otro modo, adjudicado este asunto antes de la notificación de la Resolución. La Sentencia no aborda específicamente lo relacionado con el Reloj. Tampoco la orden del **30 de mayo** se refiere al Reloj, pues la misma se emitió en conexión con una moción del Padre, presentada el **29 de mayo**, que únicamente hizo referencia a los "4 relojes" sobre los cuales no hay controversia.

Aunque posteriormente (**31 de mayo**), el Padre hizo referencia a "5 relojes" y, en un escrito del **19 de junio**, "aclaró" que la referencia anterior a "4 relojes" había sido un "error involuntario" de su abogada, ello ocurrió <u>luego</u> de la orden del 30 de mayo, por lo cual no se puede concluir que, mediante la misma, se hubiese ordenado a la Madre entregar el Reloj.

Por supuesto, nada de lo aquí dispuesto constituye una adjudicación sobre la titularidad del Reloj. Únicamente está ante nuestra consideración si hubo un acuerdo entre las partes que obligase a la Madre a entregar el mismo. Surge claramente del

récord que no hubo tal acuerdo y, por tanto, erró el TPI cuando, mediante la Resolución, le requirió a la Madre entregar el Reloj al Padre.

V.

Finalmente, la Madre plantea que el TPI debió condenar al Padre a satisfacer honorarios de abogado en conexión con los asuntos que plantea a través del recurso que nos ocupa. Solicitó que le impusiéramos $7,500.00 por dicho concepto. Veamos.

En cuanto a los honorarios de abogado en los casos de alimentos, el Artículo 22(1) de la Ley *Orgánica de la Administración para el Sustento de Menores*, 8 LPRA sec. 521(1), dispone que se otorgará el pago de honorarios de abogado a favor del alimentista, cuando este prevalezca en un procedimiento para fijar, modificar o para hacer efectiva una orden de pensión alimentaria.

En efecto, "la obligación alimentaria incluye el pago de una partida para cubrir los honorarios de abogado." *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 740 (2009). De esta forma, procede la imposición de los honorarios de abogado a favor de los menores en una acción para reclamar alimentos, sin la necesidad de que actúe con temeridad el demandado al defenderse de la reclamación. *Íd.,* a la pág. 741; *Chévere v. Levis,* 152 DPR 492, 502 (2000). Incluso, aunque el alimentista esté representado por una organización de asistencia legal a indigentes, tiene derecho a reclamar una partida por honorarios de abogado. *Íd.*; *Semidey v. Tribunal,* 99 DPR 705, 707 (1970).

Dicha norma está más que justificada, pues la negación de esos fondos en un pleito de alimentos privaría al alimentista, o a su representante, de los recursos económicos necesarios para reclamar y hacer efectivo su derecho. Incluso, podría comprometer la pensión alimentaria para atender el reclamo de pago del representante legal.

*Torres Rodríguez*, 177 DPR a la pág. 741; *Rodríguez Avilés v. Rodríguez Beruff*, 117 DPR 616, 621.

El criterio rector es compensar las dificultades que sufre el alimentista al tener que reclamar judicial o administrativamente los alimentos a quien tiene la obligación moral y legal de suministrarlos. *Íd.* Asimismo, es importante recordar que los honorarios de abogado no pertenecen al abogado, sino al litigante que dará a la cuantía concedida el destino que desee. *Torres Rodríguez*, 177 DPR a la pág. 743.

Por otro lado, el criterio que debe regir la imposición de la partida correspondiente a los honorarios de abogados es el de razonabilidad. En consecuencia, la concesión de honorarios de abogado que haga el TPI no debe alterarse a menos que la cantidad concedida sea irrazonable. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1035 (2010). Entre los factores que han de considerarse para la fijación de honorarios de abogado está la extensión del pleito. No obstante, "[p]ueden existir otros factores, asociados al curso de los procedimientos y las circunstancias del caso en particular, que incidan en el criterio del juzgador en el ejercicio de establecer una cuantía de honorarios justa y razonable." *Íd.,* a las págs. 1035-1036.

Como surge de lo expuesto arriba, la Madre ha prevalecido ante este Tribunal en su reclamación de alimentos en cuanto al pago de los servicios de la cuidadora durante el mes de junio de 2023 y, además, prevaleció en cuanto al alcance del acuerdo entre las partes en lo relacionado con el Reloj. Sobre la base del récord relacionado con estos dos asuntos, tanto ante el TPI como ante este Tribunal, concluimos que es razonable que el Padre satisfaga a la Madre $3,000.00 en concepto de honorarios de abogado.

VI.

Por los fundamentos antes expuestos, denegamos expedir el auto de *Certiorari* solicitado en cuanto a la decisión del Tribunal de

Primera Instancia de no imponer intereses por mora; se expide el auto solicitado en cuanto a los demás asuntos objeto de la decisión recurrida y se revocan aquellas porciones de la misma mediante las cuales se ordenó a la demandada entregar un reloj y se denegó la solicitud de esta de condenar al demandante a pagar el costo de los servicios de la cuidadora por el mes de junio de 2023.

Por tanto, en o antes de los cinco días laborables siguientes a la expedición del mandato, el demandante deberá satisfacer a la demandada la suma de $1,733.00 (servicios de la cuidadora por el mes de junio de 2023), más $3,000.00 por concepto de honorarios de abogado. En la medida que el demandante no pague la totalidad de dichas cuantías dentro del término provisto, este tendrá que satisfacer una sanción adicional de $200.00 por cada día que transcurra entre la fecha límite aquí dispuesta y la fecha en que finalmente cumpla con lo aquí ordenado.

Se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores compatibles con lo aquí expuesto y resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones